## CACHE COUNTY, BY HOPKIN J. MATTHEWS, COUNTY CLERK, RESPONDENT, v. JOSEPH M. JENSEN, APPELLANT.

LICENSE DEFINED—IMPOSITION OF LICENSE—POLICE POWER— PROHIBITORY LICENSE—WHEN VOID. POWER TO LICENSE— CONFERRED BY SUB. 11, SEC. 511, R. S. 1898. REVENUE FROM LICENSE—WHEN NOT OBJECTIONABLE. STATUTE GIVING POWER TO LICENSE—HOW CONSTRUED. BOARDS OF COUNTY COMMISSIONERS—POWERS—TO LICENSE—SUB. 11, SEC. 511, R. S. 1898. LICENSE IN NATURE OF TAX ON PARTICULAR INDUSTRY—WHEN VOID. DISCRIMINATION IN TAXATION—PROHIBITED BY CONSTITUTION—DUE PROCESS OF LAW.

*License Defined.*

> A mere tax imposed upon a business or occupation, is not a license, unless the levy confers a right or privilege as to the business, which would not otherwise exist.

*Imposition of License— Police Power —Prohibitory License— When Void.*

> License, in general, implies privilege and regulation, and the imposition of it falls within the police power of the State; but the charge of a license fee, against a business or occupation, commendable and necessary for the public good, which, in effect, is prohibitory of such business or occupation, is void as an unlawful exercise of such power.

*Power to License— Conferred by Sub. 11, Sec. 511, R. S. 1898.*

> The power to license conferred by subdivision 11, of Sec. 511, R. S. 1898, is "for purposes of regulation and revenue." This does not mean for "revenue" alone, but when proper authority has once determined that public interests will be best

served by requiring a certain business, commendable and useful in itself, to be conducted under proper regulations, such authority may impose a license, fix the rate, and provide for the collection, *provided* such business be carried on in the county, "outside the limits of incorporated cities."

*Revenue from License — When Not Objectionable.*

In proper cases, where a license is fixed, while the fee is designed to defray the expenses of regulation, it is no objection to the license that incidentally a revenue is also obtained, if the license be uniform and equal as to all subjects engaged in the business, and under the circumstances not wholly unreasonable.

*Statute Giving Power to License — How Construed.*

The power to license must be the subject of a direct grant, it can not be implied ; a statute giving such power must be construed with great strictness, and any doubt or ambiguity arising out of the language employed must be resolved in favor of the public.

*Boards of County Commissioners — Powers — To License — Sub. 11, Sec. 511, R. S. 1898.*

Subdivision 11, of Sec. 511, R. S. 1898, does not confer authority upon boards of county commissioners to impose a license for revenue only, without regard to regulation, but does confer authority to impose licenses on the subjects referred to in the statute, for regulation and revenue.

*License in Nature of Tax on Particular Industry — When Void.*

Neither the constitution nor the statute, Sec. 511, R. S. 1898, authorizes an ordinance by a board of county commissioners, which singles out the one industry of sheep raising, and under a pretense of licensing the business, imposes a certain tax per thousand upon sheep, so that he who has 4,000 head pays as much as he who has 4,999 head, and there is no protection afforded by the ordinance to those engaged in the business, nor anything to indicate that any such regulation or protection is required, and the record shows that the business has been conducted in the same manner as before the passage of the ordinance.

*Discrimination in Taxation —Prohibited by Constitution — Due Process of Law.*

Unjust and illegal discrimination between persons, in taxation, and the denial of equal justice are within the prohibition of the constitution of this State and of the United States. No person can be deprived of his property without due process of law.

BASKIN, J., dissenting.

(Decided March 28, 1900.)

Appeal from the First District Court, Cache County, Hon. C. H. Hart, *Judge.*

Action by Cache County to recover the sum of $600 alleged to be due from defendant under the provisions of a certain ordinance passed by the Board of County Commissioners, imposing a license tax upon all persons, companies, or corporations in the business of raising, grazing, herding, or pasturing sheep within the limits of said county. From a judgment for plaintiff, defendant appealed. *Reversed.*

*James H. Moyle, Esq., Messrs. Brown & Henderson and D. H. Wells, Jr., Esq.,* for appellant.

This ordinance is excessive in amount. Five cents per head as a tax is far in excess of a reasonable levy on the value as was also heretofore shown.

Courts may determine what is an excessive tax. Cooley on Taxation, p. 408, and cases cited.

The ordinance is void because it does not compel the county clerk to issue a license, if he is authorized to do so, when an applicant complies with its terms. There is nothing, in fact, in the ordinance or law requiring anyone to issue the license. It merely provides that the

---

1 *Ogden City* v. *Crossman,* 17 Utah, 66; *Judge* v. *Spencer,* 15 Utah, 242, cited.

county clerk shall collect the license fee, but he is not even authorized to issue the license, much less required to do so.

If there is a discretion lodged in the clerk, or other officer, by which he may refuse a license, or if the authority issuing the license is not compelled to issue, to all complying with its terms, then it is void.    The clerk not being required to issue the license, it is left open and discretionary, and therefore void.    *Yick Wo.* v. *Hopkins*, 118 U. S., 356.

The ordinance shows on its face an illegal and unlawful discrimination between owners or possessors of sheep in the county.    *City* v. *Levy*, 21 Am. Rep., 553; *City* v. *Dudley*, 28 Am. St. Rep., 180, 184; *State* v. *Tennant*, 28 Am. St. Rep., 715.

A license fee is a tax, within the meaning of the constitutional provision, that taxes shall be uniform upon the same class of subjects, within the territorial limits levying the same.    *St. Louis* v. *Spiegel*, 90 Mo., 589.

*Frank K. Nebeker, Esq.*, for respondent.

Ordinances similar in all respects to the one before the court have been passed by several of the counties of the State of California, and have been uniformly upheld and their constitutionality sustained by the supreme court of that State.    *Ex parte* Mirande, 73 Cal., 365; 14 Pac., 888; *County of Eldorado* v. *Meiss*, 100 Cal., 268; 34 P., 716; *County of Inyo* v. *Erro*, 119 Cal., 119; 51 Pac., 32.

The next question that presents itself is this: Does Section 3, Article 13 of the constitution, apply to the ordinance in question ? — On principle and under the authorities it does not.    So much of that section as is pertinent to the present inquiry is as follows:

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the State."

This obviously relates to the direct *ad valorem* tax upon property as distinguished from the specific tax upon business or occupation. Sedg. St. and Const. Law (2d ed.), 504–507; Burrough's Taxation, Sec. 54; *Denver City Ry. Co.* v. *City of Denver*, 41 Pac., 826; *City of Newton* v. *Atchison*, 1 Pac. (Kan.), 288; *Walcott* v. *People*, 17 Mich., 68; 1 Desty Taxation, p. 191, Sec. 36; *City of San Jose* v. *San Jose S. C. R. Co.*, 53 Cal., 475; *Ex parte* Mirande, 14 Pac., 888; *Marmet* v. *State*, 45 Ohio St., 63; 12 N. E., 463; *Com.* v. *Moore*, 25 Grat., 951; *American Union Ex. Co.* v. *City of St. Joseph*, 66 Mo., 675; *City of St. Louis* v. *Green*, 7 Mo. App., 468; *Davis* v. *Mayor, etc.*, 64 Ga., 128; *Ogden City* v. *Crossman*, 51 Pac., 985.

Ordinance provides for a license tax upon business, not a tax upon property.

The amount of license is based, for convenience, upon the number of sheep with which a person is doing business. That is to say, the number of sheep is the measure of the size of the business. It can not be argued from that alone that the sheep and not the occupation are taxed. There is no remedy *in rem* for failing to pay the license as would be the case if the sheep were taxed. A license upon hack drivers in proportion to the number of horses driven is legal. *Marmet* v. *State, supra.*

A license upon a merchant based upon the amount of stock carried is good. *City of Newton* v. *Atchison, supra.*

Ordinance valid although cities not excluded.

Ordinances are to be construed by the same rules as acts of Legislatures. *In re* Yick Wo., 9 Pac., 139.

It is a familiar principle of statutory construction that where part of a statute is unconstitutional and part not, the latter is allowed to stand.    Black Constitutional Law, 62; *Pressor* v. *Illinois*, 116 U. S., 252; *Atty. Gen'l* v. *Amos*, 60 Mich., 372, 27 N. W., 571; *Lyman* v. *Martin*, 2 U., 136; *Bank* v. *Owens*, 2 Peters, 526; *In re* Assessment of Taxes, 54 N. W. (Dak.), 818.

Court did not err in overruling motion for non-suit.

A non-suit should not be granted on the grounds of insufficiency of the evidence, where the evidence tends to justify a reasonable and proper inference that the plaintiff may recover.  Am. & Eng. Ency. P. R., Vol. VI, p. 947, a mere *prima facie* case made by plaintiff is all that is necessary.  Id., p. 943.

On the question of the presumption in favor of constitutionality we cite: Black Int. of Laws, p. 93; Tonnage Tax Cases, 62 Pa. St., 286; *Kerrigan* v. *Force*, 68 N. Y., 381; *Stewart* v. *Supervisors of Polk Co.*, 30 Ia., 9.

### STATEMENT OF FACTS.

This action was brought to recover of the defendant the sum of $600, alleged to be due as a license tax, imposed, by virtue of an ordinance passed and approved May 7, 1898, by the board of county commissioners, upon the defendant because of his business of raising and herding sheep.    The ordinance reads as follows:

"The Board of County Commissioners of the County of Cache, ordain as follows: —

SECTION 1. Every person, company, or corporation engaged in the business of raising, grazing, herding or pasturing sheep in the County of Cache, State of Utah, must annually procure a license therefor from the County Clerk of Cache County, and make therefor the following payment: —

First. Those owning or having in their possession and under their control five thousand or more sheep constitute the first class and must pay two hundred and fifty dollars per annum for the first five thousand sheep, and for every additional thousand sheep the sum of fifty dollars.

Second. Those owning or having in their possession and under their control four thousand sheep and less than five thousand, constitute the second class and must pay two hundred dollars per annum.

Third. Those owning or having in their possession and under their control three thousand sheep and less than four thousand, constitute the third class and must pay one hundred and fifty dollars per annum.

Fourth. Those owning or having in their possession and under their control two thousand sheep and less than three thousand, constitute the fourth class and must pay one hundred dollars per annum.

Fifth. Those owning or having in their possession and under their control fifteen hundred sheep and less than two thousand, constitute the fifth class and must pay seventy-five dollars per annum.

Sixth. Those owning or having in their possession or under their control one thousand sheep and less than fifteen hundred, constitute the sixth class and must pay fifty dollars per annum.

Seventh. Those owning or having in their possession and under their control less than one thousand sheep constitute the seventh class and must pay five cents per head per annum.

SECTION 2. Every person who shall engage in the business of raising, grazing, herding, or pasturing sheep, or be so engaged within the County of Cache, State of Utah, without first obtaining a license therefor, shall be guilty of a misdemeanor.

SECTION 3. It shall be the duty of the county clerk of said county to collect the license provided for by this ordinance, and he may enforce the collection thereof by an ordinary action at law.

SECTION 4. The said clerk shall collect a fee of one dollar for each license issued, which shall be paid by him into the salary fund of said county.

SECTION 5. All moneys collected for license under the provisions of this ordinance shall be paid over to the county treasurer and placed to the credit of the general fund of said county.

SECTION 6. It shall be the duty of the county attorney to prosecute all actions arising under the provisions of this ordinance.

SECTION 7. This ordinance shall take effect and be in force on and after fifteen days from its passage, and all ordinances or parts of ordinances in conflict herewith are hereby repealed."

It was alleged in the complaint that the defendant was engaged in the business referred to in the ordinance, in Cache County, from May 22 to July 20, 1898, without obtaining any license therefor; that during such time and within the county, he was raising and herding 12,500 sheep; and that he refused to comply with the provisions of the ordinance.

At the trial the defendant admitted that during a portion of the time alleged, he had 2,000 sheep in Cache County. The balance of his sheep had been leased to other parties and were grazed in Cache and other counties. There is nothing to show that any police protection or regulation of any kind is required, because of the carrying on of the business in question in Cache County. It was also admitted that the sheep had been regularly assessed for the year 1898, having been valued at $1.50 per head, and

that the total county taxes amounted to $7\frac{1}{4}$ mills on the dollar.

From the evidence it appears that the defendant owned in all about 13,000 sheep. Their range for grazing during the year includes Tooele, Box Elder, Weber, Cache, Rich, and Summit Counties. From November until May they graze upon the desert in Tooele and Box Elder Counties on small sage brush, depending upon snow for water, there being no springs or streams of water there. About April the herders begin to move eastward with their herds as the snow disappears, and continue to so move as necessity demands, until they get into the high mountains in Cache, Rich, and Summit Counties, where their summer range is. There they remain grazing through the several counties, until the snows of autumn compel them to again seek the low lands of the desert. Thus the business is carried on from year to year, upon lands wild and untillable, which form part of the public domain. The business of raising and herding sheep is a lawful, laudable, natural, and indispensable industry. During the year 1898 there was no other license ordinance, except the one in question, in Cache County, although among the other chief industries of that county are the raising of cattle and horses, and farming.

At the trial, the court entered judgment in favor of the plaintiff for $100, and costs, in accordance with the provisions of the ordinance. This appeal is from the judgment.

BARTCH, C. J., after stating the case as above, delivered the opinion of the court.

It is contended, in the first instance, on behalf of the appellant, that the passage of the ordinance in question,

by the board of county commissioners, was an attempt to tax an occupation for revenue purposes, and that any delegation of such authority, on the part of the Legislature, to such boards or *quasi* municipalities was without effect, because of violation of Secs. 2, 3, 5, and 12, Art. 13, Const. of this State. These several Sections of the constitution were considered in *Ogden City* v. *Crossman*, 17 Utah, 66, and received a construction adverse to appellant's contention. It was there, by Mr. Justice Miner, delivering the opinion of the court, said: "Sections 2 and 3 of Article 13 of the constitution were controlled and limited by Sections 5 and 11, above quoted, in so far as the power is granted to the Legislature to employ municipalities to assess and collect taxes for all the purposes of such corporation, and in providing for a tax upon income, occupation, licenses, franchises, or mortgages. Under the power, the Legislature could properly grant municipalities the rights conferred by Sections 89 and 287, above referred to. Under the constitution, taxation is clearly a legislative prerogative, and may be conferred upon a municipality to such an extent and for such purposes as may be deemed expedient, so long as the limits and restrictions of the organic law are observed. When the Legislature delegated the power of the municipality under Section 3, " 'to provide by law a uniform and equal rate of assessment and taxation of all property in the State according to its value in money,' it had reference to the levy of an *ad valorem* or direct tax upon property, and does not apply to licenses imposed upon privileges, business, and occupations."

Section 89 referred to in connection with 287, in the above quotation, is subdivision 89 of Section 1755, C. L. U. 1888, and reads as follows: "To raise revenues by levying and collecting a license fee or tax on any private

corporation or business within the limits of the city, and regulate the same by ordinance. All such license fees and taxes shall be uniform in respect to the class upon which they are imposed."

In accordance with this provision, Ogden City, by ordinance, imposed a license tax of five dollars per annum on each telephone instrument operated by the defendant, Rocky Mountain Bell Telephone Co., in that city, and the court held the tax a valid exercise of legislative power under the constitution and statute.

Whether or not that case was correctly decided, and whether we would now, upon further consideration, place the same interpretation upon those sections of the constitution are questions immaterial here, under the view we have taken of this case. For all purposes herein it may be admitted that the principles stated in that case, with reference to an ordinance passed by a city, apply with equal force to one passed by a county, and that the Legislature has plenary power to authorize a board of county commissioners to impose a license upon occupation for revenue only, even in the absence of any regulation, police or otherwise, of the business. If, for the purposes of this case, such be the admission, which is certainly as broad as could in reason be contended for, then the material questions, decisive of this case, are: Did the Legislature confer such power in this instance? and is the ordinance, under consideration herein, a proper exercise of the power conferred?

To determine the first of these inquiries, reference must be had to Section 511, R. S. 1898, which, in subdivision 11, authorizes the board of county commissioners, in each county, under such limitations and restrictions as are prescribed by law, "To license, for purposes of regulation and revenue, all and every kind of business, not prohibited

by law, transacted and carried on in such county, and all shows, exhibitions, and lawful games, carried on therein outside the limits of incorporated cities, to fix the rates of license tax upon the same, and to provide for the collection thereof, by suit or otherwise.''

License, in common parlance, implies permission to do something which may not be done without a license. In this sense, we are to understand the word was used in the constitution and statutes, unless the context indicates a different or more comprehensive meaning. ''The object of a license,'' says Mr. Justice Manning, in *Chilvers* v. *People*, 11 Mich., 43, ''is to confer a right that does not exist without a license.'' A mere tax imposed upon a business or occupation, therefore, is not a license, unless the levy confers a right or privilege, as to the business, which would not otherwise exist. So, a right to license a business or occupation does not imply a right to exact a tax merely for revenue, and, where the object is revenue, the power to license for that purpose must be conferred in unequivocal terms. Cooley's Const. Lim. 242.

License, in general, implies privilege and regulation, and the imposition of it falls within the police power of the State. That power may be exercised, and license taxes are frequently imposed, with a view to discourage business and occupations which are injurious in their tendencies and prejudicial to the public good, but ''to justify a restrictive license, the business must of itself be of such a nature that its prosecution will do damage to the public, whatever may be the character and qualifications of those who engage in it.'' Tiedeman's Limitations of Police Power, p. 278. The license, in cases where the business is unlawful and detrimental to public morals, may be and frequently is imposed as a prohibitory measure. A charge of a license fee, however, against a busi-

ness or occupation, commendable and necessary for the public good, which, in effect, is prohibitory, of the carrying on or pursuing of such business or occupation, is void as an unlawful exercise of power. This is especially so when such a license fee is imposed by a municipality or board which has no inherent power to issue a license, and to require the payment of a license fee. 13 Am. & Eng. Enc. of Law, p. 532; Cooley's Const. Lim., 244; *Kitson* v. *Mayor*, etc., of Ann Arbor, 26 Mich., 324; *People* v. *Jarvis*, 46 N. Y. Supp., 596.

A municipality can exercise such power only as has been conferred upon it. This is strictly so as to license.

"The grant of a license," says Judge Cooley, "may be made by the State directly, or it may be made indirectly through one of the municipal corporations of the State. Of the indirect grant it is to be observed that a municipal corporation as such has no inherent power to grant licenses or exact license fees; it must derive all its authority in this regard from the State, and the power must come by direct grant and can not be taken by implication."

And again he says: "It is perhaps impossible to lay down any rule for the construction of such grants that shall be general and at the same time safe; but as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given, the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated." Cooley on Taxation, 597.

Referring to employments and occupations, which are

harmless and useful for the public weal, Mr. Tiedeman says:

"They not only do not threaten any evil to the public, but their prosecution to the fullest measure of success is a public blessing. Instead of placing trades in general under restraints and police regulations, in which a license would be required, the utmost freedom can best attain the greatest good to the public. When, therefore, we see municipal corporations requiring licenses for the prosecution of all kinds of occupations and employments; if their action can be justified at all, it must rest upon some other grounds than as a police regulation. It can only be justified as a tax upon the profession or calling. Having the natural, inalienable right to pursue a harmless calling, he can not be required to take out a license before he can lawfully pursue it." Tiedeman's Limitation of Police Power, Sec. 101.

In the light of these principles, can it be said, with any degree of certainty, that the Legislature, in the enactment of the provision of the revised statutes above quoted, intended to confer power upon the board of county commissioners to single out and impose a license upon a harmless and useful business, for the sole purpose of raising revenue, without regard to regulation for such business? Is it reasonable, in the face of constitutional provisions containing ample power to raise revenue for all governmental purposes, to impute to the Legislature such an intendment, in the absence of language conferring such authority in clear and unequivocal terms? We think not. The power to license, conferred by subdivision 11, is "for purposes of regulation and revenue." This does not mean for "revenue" alone, but when it has once been determined, by proper authority, that the public interests will be best subserved by requiring a certain business, however com-

mendable and useful, in itself, to be conducted under proper regulations, such authority may impose a license on the business, and fix the rate of the license tax or fee and provide for collection of the same, provided that such business be carried on in the county " outside the limits of incorporated cities." In such event, while the fee is designed to defray the expenses of regulation, it is no objection to the license that incidentally a revenue is also obtained, if the license tax, under the circumstances, be not wholly unreasonable, and be uniform and equal as to all subjects engaged in the same business. That the Legislature intended "regulation" to be a principal element of every license, under the statute, is manifest from the context, for, as will be observed, " every kind of business," and all shows, exhibitions, and games, not prohibited by law, are made the subjects of license. Here are manifestly included many objects which render regulation important, for the purpose of protection to the public, and to guard individuals against fraud and imposition. If the Legislature had intended to delegate to such boards, through the medium of a license, the power to raise revenue, without reference to regulation, it was within its province to do so in unmistakable terms. Any doubt or ambiguity, arising out of the language employed in the statute, must be resolved in favor of the public. The power must be the result of a direct grant and can not be implied. Such a statute must be construed with much strictness. Suth. on Stat. Const., Sec. 365; *Joyce* v. *City of East St. Louis,* 77 Ill., 156; *Commissioners* v. *Mighels,* 7 Ohio St., 109; *The City of East St. Louis* v. *Boatmen's Ins. & Trust Co.*, 47 Mo., 150.

The arbitrary power contended for, by virtue of subdivision 11, being in derogation of the natural rights of the individual, will not be aided by judicial interpreta-

tion.   "Such interference with the natural right of acquisition and enjoyment guaranteed by the constitution can only be justified when public necessity clearly demands it. Being a sovereign power, it can only be exercised by the general assembly when delegated by the people in the fundamental law; much less can it be exercised by a municipal corporation without a further unequivocal delegation by the legislative body.   The power can be delegated by the Legislature, but only in plain, unambiguous words. Statutes for that purpose will be construed strictly, and they must be closely pursued; a departure in any material part will be fatal."   Suth. on Stat. Const., Sec. 365.

Our conclusion on this point is that the Legislature did not, in subdivision 11, confer authority upon boards of county commissioners to impose a license for revenue only, without regard to regulation, but that they may impose licenses on the subjects referred to in the statute for regulation and revenue.

The remaining material question is whether the ordinance in controversy is in harmony with the statute, and is, under the circumstances in evidence, a proper exercise of delegated authority.

Turning to the ordinance, it will be observed that under its terms a license is imposed solely upon the business of raising, herding, and pasturing sheep.   An examination thereof also shows that the charges for the license are unequal, for, according to its terms, the person who owns and pastures 5,000 sheep pays the same sum as the one who has 5,999, and pays $50 more per annum than a person who has 4,999.   Likewise he who has 4,000 must pay the same as he who has 4,999, and $50 more than a party who happens to have one sheep less than 4,000.   So, likewise, similar unequal rates appear as to all other classes, except the seventh class, which exacts a fee or tax of five

cents per head per annum. What induced the adoption of a scale of rates so manifestly unfair and unjust is difficult to determine. Certainly if a charge of five cents per head, as in the seventh class, had been imposed upon all sheep, it would have been more in harmony with the principle of uniformity and equality declared in the constitution with reference to the subject of taxation.

According to that instrument every species of property is to bear its just proportion of the burden of maintaining the government.

In *Judge* v. *Spencer*, 15 Utah, 242, this court, considering the constitutional provisions respecting taxation, said:

"The framers of the constitution, however, evidently intended that no property should be relieved from the burden of taxation, except such as was defined and specified for exemption by that instrument. Such intent appears to be emphasized in Section 3 of the same article, which directs that ' the Legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the State, according to its value in money, and shall prescribe by general law such regulations as shall secure a just valuation for taxation of all property; so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property,'— and then provides for a deduction of debts from credits, and specifies certain classes of property which shall be exempt from taxation, but no reference is made to mortgages. This provision made it incumbent upon the Legislature to provide a uniform system by which every species of property within the State, not exempt by the organic law, should equally and ratably bear its due proportion of the public burden, and the Legislature had no power to exempt property not exempt under the constitution."

How, then, can it be said that an ordinance is valid

which is not only oppressive and tends to prohibit the carrying on of a legitimate business, but which may, in practice, as will more clearly appear hereinafter, become an instrument for exempting property, not exempt under the provisions of the constitution, from bearing its just share of the public burden ? The law abhors inequality and lack of uniformity in taxation, whether the burden be imposed by license or by levy and assessment.

But, referring further to the ordinance in question,— how the amount of the charge, in each case, is to be determined, whether the owner or the herder is to state the number of sheep he is pasturing, or who is to count them, or when or where they are to be counted, does not appear therefrom. The county clerk is to collect the license and pay the money to the county treasurer, and is also to collect one dollar for each license issued and pay the same into the salary fund. The county attorney is to do the prosecuting. The ordinance does not even contain a hint as to regulation of the business; nor that the business requires any regulation; nor that the county will afford protection of any kind to the persons engaged in the business, nor that it is of such a character as to require regulation or protection. The business may be conducted by those engaged therein where and how they will. No intention to regulate it is manifest from the context or otherwise. The ordinance imposes no restrictions as to the manner the business shall be carried on, and grants no lawful privilege that was not previously enjoyed. In direct violation of the provision of the statute, which excepts incorporated cities from the authority of the board of commissioners, the ordinance grants a license which includes within its scope such cities. Evidently the efforts of the board resulted, not in the imposition of a license upon a business, but in the levy of an unequal and unjust

tax upon property.   The thing provided for by this in-
strument is not a license, within the terms of the statute,
but by design a prohibitive tax in violation of the statute
and constitution.   Nor do the facts and circumstances dis-
closed by evidence, *aliunde*, throw any other or different
light upon the subject, by showing that in practice the
thing evolved is a license, and has no tendency to pro-
hibit the business on which it is imposed.   There is
nothing in the testimony to show that the board of com-
missioners, in practice, prescribed or enforced any regula-
tions for raising and herding sheep; or that it afforded any
protection to those engaged in the business.   Nor is there
anything to indicate that any such regulation or protection
is required.   So far as shown by the record the business
has been conducted in precisely the same manner since,
as before the ordinance was passed.   The sheep now, the
same as they were before the license was required, are
grazed upon lands forming a part of the government lands
of the United States; in winter time upon the low untilla-
ble lands of the western desert, where no other stock can
be pastured with profit; in the summer season in the high
mountain ranges.   It is shown that they must necessarily,
because of climatic conditions, be pastured, during the
year, in five different counties, the storms being too severe
in the mountains in the winter, and the heat and drought
too great in the desert in the summer.   They must, there-
fore, be pastured to and fro, as necessity requires.

Without further specific reference to the evidence, sup-
pose each of the five counties, in which the business is
thus carried on, should impose a license tax of five cents
per head on each sheep; or suppose, as was offered to be
shown to be the case in Rich County, each of those coun-
ties were to exact a license of ten cents per head per an-
num, and this, too, in addition to the regular taxes which

21 Utah — 15

other industries are required to pay, could the sheep industry long survive? Could an owner of sheep pay twenty-five or fifty cents per head per annum, or even more if such legislation were to be sanctioned, and prosper? Would not such a burden, under the conditions existing in this State, mean ruin to the business in question? Yet sheep raising is one of the chief industries of this commonwealth, and there appears to be no other known use to which the vast areas of our western desert lands can be so profitably put. The business does not belong to that class of occupations which are demoralizing in their tendencies. It is useful, commendable, and ancient as civilization itself. From time immemorial it has been regarded as indispensable to the comfort of the public. Why, then, single out this particular business to burden it with a tax which, under existing conditions, must be regarded as prohibitory, and permit the raising of cattle and horses and every other occupation to be carried on without any license? Counsel for the respondent suggests that the business of sheep raising needs some degree of regulation, and doubtless this is true, for where large bands of sheep are herded, the public welfare, in all probability, requires that there be regulation and protection, but the answer to the suggestion is that the ordinance provides for neither. If it had been designed to regulate and protect, it would possess some merit, but it was manifestly intended for no such purpose. Whatever may have been the intention of the board of commissioners, their enactment is one for revenue only, and is so unequal and oppressive that it can not be upheld. The fee exacted is a tax, not a license; and, if the power thus attempted to be exercised were to be sanctioned, it is perceived that regulation would not long be necessary, for the tendency would be to drive the business out of the county, and out

of the State, if the other counties would follow the example and exercise the power.

When it is considered that such a power of taxation would be in the hands of but a few men in each county, whose action might proceed from prejudice toward a particular business, from favoritism or animosity, or from other improper motives or influences easy of concealment and difficult of detection, it becomes unnecessary to suggest the injustice which might be done under cover of the power, because that becomes apparent upon a moment's reflection. Under such a power as is contended for by counsel for the respondent, the sheep industry, or one particular industry, in some of the counties of this commonwealth, might be taxed for more than the cost of maintaining the government, to the practical exemption of all other kinds of business from contributing their share of the burden. Private rights can not thus be arbitrarily invaded or annihilated, under the mere guise of a license. One class of citizens can not thus be compelled to bear the burdens of government, to the advantage of all other classes. The law, as we have seen, will not permit it. Neither the constitution nor the statute authorizes boards of county commissioners to enact ordinances, as in this instance, to tax citizens arbitrarily and unjustly, by license which confers no privilege that was not previously enjoyed, and which has no view to regulation. Unjust and illegal discrimination between persons in taxation, and the denial of equal justice, are within the prohibitions of the constitution of this State, and of the United States. No person can be deprived of his property without due process of law.

The ordinance under consideration, not being within the power granted, is void. Tiedeman's Lim. of Police Power, Sec. 102; Cooley on Taxation, 169; *City of*

*St. Paul* v. *Traeger*, 25 Minn., 248; *State* v. *Camp Sing*, 18 Mont., 128; *State* v. *Glavin*, 67 Conn., 29; *City of Brooklyn* v. *Nodine*, 26 Hun., 512; *Yick Wo.* v. *Hopkins*, 118 U. S., 356; Matter of application of Jacobs, 98 N. Y., 99; *New York* v. *Second Avenue R. R. Co.*, 32 N. Y., 261; *In re* Yot Sang, 75 Fed. Rep., 983; *Gulf, Colo. & Santa Fé R'y* v. *Ellis*, 165 U. S., 150; *Commonwealth* v. *Stodder*, 2 Cush., 563; *People* v. *Jarvis*, 46 N. Y. Supp., 596.

Counsel for the respondent cites and relies on several California cases, where ordinances, similar to the one in question herein, were held valid. It does not appear, however, from these decisions that the conditions under which sheep raising is carried on in California, are similar to those under which the business is conducted in this State. Nor are the provisions of the California constitution on the subject of taxation the same as those in our constitution. But if in both States all these things were similar, we should not be inclined to follow those decisions.

The case of *State* v. *Camp Sing, supra*, accords more nearly with our views on the subject herein considered.

Having taken the view that the ordinance is invalid, it becomes unnecessary to consider any other question presented. The case must be reversed, with costs, and the cause remanded, with directions, to the court below, to set aside its judgment herein, and enter judgment in favor of the defendant for costs.

It is so ordered.

McCARTY, Dist. Judge, concurs; BASKIN, J., dissents.