CHAIN BELT COMPANY, Plaintiff in error, vs. CITY OF MIL-
WAUKEE, Defendant in error.

*October 31—November 19, 1912.*

*Municipal corporations: Power to license occupations: Elevators: Mil-
waukee city charter: Statutes: Construction.*

1. A city has no authority to impose license taxes upon persons en-
gaged in particular occupations or, for the purpose of regulat-
ing such occupations under the police power, to require that
persons engaged therein be licensed, unless such authority has
been expressly or by necessary implication granted by the state.
It cannot be implied from the "general welfare" clause in the
city charter.

2. A statute giving power to license must be strictly construed, and doubt or ambiguity arising out of the language employed must be resolved in favor of the public.
3. Neither the general statutes nor the charter of the city of Milwaukee give that city power to license elevators or elevator operators.

ERROR to review a judgment of the municipal court of Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

For the plaintiff in error there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *Nathan Glicksman.*

For the defendant in error there was a brief by *Daniel W. Hoan,* city attorney, and *E. L. McIntyre,* special assistant city attorney, and oral argument by *Mr. McIntyre.*

TIMLIN, J.   On December 5, 1910, the city of *Milwaukee,* by amendment of sec. 11 of an ordinance relating to elevators, forbade the operation of any elevator in the city of *Milwaukee* except by a person duly licensed for that purpose, and provided for the payment of a fee and issue of a license to persons possessing the qualifications of sobriety, industry, and efficiency.   The plaintiff in error was convicted of having violated this ordinance.   This writ of error to the judgment of the municipal court challenges the power of the city to enact such an ordinance, on the ground that it is not within any ordinance power delegated by the legislature to the city.

Sec. 3 of ch. IV of the city charter, containing what is popularly known as the "General Welfare Clause," provides that the common council shall have power to enact, etc., all such ordinances, etc., as they shall deem expedient for the government and good conduct of the city, for the benefit of the trade, commerce, and health thereof, for the suppression of vice, for the prevention of crime, and for carrying into effect the powers vested in said common council.   "For these purposes the common council shall have authority—anything in a general law of this state to the contrary notwithstanding—

by ordinances, resolutions, by-laws, rules or regulations," (1) to regulate groceries, etc.; (2) to license, tax, regulate, suppress, and prohibit billiard tables, etc.; (3) to license, tax, regulate, suppress, or prohibit all exhibitions of common showmen, etc.; (4) to restrain or prohibit all descriptions of gaming, etc.; and so on in this form for sixty-four subsections covering a variety of subjects, none of which includes the licensing of elevator operators by any stretch of construction, unless it be subsec. 62, which reads: "To control and regulate the construction of buildings, chimneys and stacks, and to prevent and prohibit the erection or maintenance of any insecure or unsafe buildings, stack, wall or chimney, in said city, and to declare them to be nuisances, and to provide for their summary abatement," or subsec. 63, which authorizes the common council to declare by ordinance that it shall be unlawful for any hall, theater, opera house, church, school house, or building of any kind whatsoever to be used for the assemblage of people, or for any building exceeding three stories in height to be used as a manufactory, hotel, or boarding house, or for any other purpose, unless the same is provided with ample means for the safe and speedy egress of the persons therein assembled, in case of alarm, and may require and regulate the erection of ladders, fire-escapes, stand-pipes, or other appliances for the escape of persons from such buildings. In ch. XIV of the charter, relating to the fire department, authority is given to the common council to prevent the dangerous construction and condition of chimneys, fireplaces, hearths, stoves, stove pipes, ovens, boilers, and apparatus used in and about any building, and to cause the same to be removed, or placed in a safe and secure condition, when considered dangerous; also to compel the owners and occupants of buildings to have scuttles in the roofs and stairs or ladders leading to the same; also to authorize the mayor, aldermen, and other officers of the city to keep away from the vicinity of any fire all idle and suspected persons and to com-

pel all bystanders to aid in the extinguishment of fires and in the preservation of property exposed to danger thereat; and generally to establish such regulations for the prevention and extinguishment of fires and for the safety and protection of persons from injury thereby as the common council may deem expedient. No other provision of the charter or of any general law of the state under which this power to license elevator operators is claimed has been brought to our attention.

General statutes of the state relative to elevators are sec. 1636—5, Stats. (Supp. 1906), being sec. 2, ch. 349, Laws of 1901, which provides that the inside walls or casings of every elevator used for the conveyance of passengers to and from the upper stories of certain described buildings shall be constructed of fire-proof material throughout; ch. 523, Laws of 1907, which prohibits any person, firm, or corporation from employing or permitting any child under sixteen years of age to have the care, custody, management, or operation of any elevator; ch. 338, Laws of 1909 (sec. 1728*f*, Stats.), to the same effect. By ch. 112, Laws of 1907 (sec. 1021*h*, Stats.), it is made the duty of an officer of the bureau of labor and industrial statistics to examine freight and passenger elevators and condemn those found to be defective and unsafe by serving written notice on the person for whom it is being operated or on his agent, or by posting such notice on the walls or in the cab of any elevator found to be in an unsafe condition. If after such condemnation the owner or person for whom the elevator is being operated shall continue the use thereof without making such repairs as will place it in a safe condition, he will be liable civilly and criminally for any physical injury caused by such use, whether such injury results in the death of the person injured or not.

One of the most effective modes of regulation is to declare the acts, conduct, business, or transaction in question unlawful unless licensed and then provide rules for the granting or revocation of such license. But this extraordinary power is

liable to be used oppressively and the possession of such power is not readily presumed. The legislature may be willing to give this power to the city in its full extent so as to enable the city to license practically all callings, or to a limited extent so as to enable the city to license dangerous callings, or it may not be willing to delegate this power at all or only with limitations and restrictions.

"Even the right to license must be plainly conferred or it will not be held to exist. Thus power to make 'by-laws relative to hucksters, grocers, and victualing shops' does not authorize the corporation to exact a license from persons carrying on such business. Nor does the general power to pass prudential by-laws, not inconsistent with the laws of the state, confer the authority to demand a license. If the charter or statute enumerates the occupations or businesses which may be regulated and licensed, the enumeration, if on the whole such appears to be the legislative intent, is exclusive, and the municipality has no power to license or regulate occupations or businesses not embraced in the enumeration." 2 Dillon, Mun. Corp. (5th ed.) § 667; *Wis. Tel. Co. v. Oshkosh,* 62 Wis. 32, 21 N. W. 828.

The power of a municipal corporation to impose license taxes on persons engaged in the pursuit of a particular occupation must be conferred by the state expressly or by necessary implication. *Cambridge v. Cambridge W. Co.* 99 Md. 501, 58 Atl. 442. To the same effect, *Willkie v. Chicago,* 188 Ill. 444, 58 N. E. 1004, 80 Am. St. Rep. 182; *Gray v. Wilmington,* 2 Marv. (Del.) 257, 43 Atl. 94; *State v. Smith,* 67 Conn. 541, 35 Atl. 506, 52 Am. St. Rep. 301. An ordinance requiring a license for carrying on a jewelry business in the town, declaring a fine for carrying it on without a license, is *ultra vires* where the power to pass it is not expressly or impliedly granted the town. *Mena v. Smith,* 64 Ark. 363, 42 S. W. 831. A statute giving power to license must be strictly construed, and doubt or ambiguity arising out of the language employed must be resolved in favor of the public. *Matthews*

*v. Jensen,* 21 Utah, 207, 61 Pac. 303. The authority of a city to impose a tax on the use of its streets by enumerated vehicles must be conferred either expressly or by necessary implication and is subject to strict construction. *Terre Haute v. Kersey,* 159 Ind. 300, 64 N. E. 469, 95 Am. St. Rep. 298. Licenses for the purposes of regulation, granted under an exercise of the police power, must also have special legislative authorization, at least to the extent of conferring upon the city authority to regulate the particular or dangerous callings which the ordinance undertakes to license.

There is in the charter and statutes above referred to no express grant to the city of *Milwaukee* of power to license elevators or elevator operators. No such power can be implied from the "General Welfare Clause" or from the specific provisions relating to other and different subjects. The enumeration of subjects which may be regulated by license also tends somewhat to indicate a legislative intention that the city should not exercise that power over other subjects. This court cannot grant that power to the city. If the legislature has not in some way given the city that power the city does not possess it. We are satisfied that upon no fair and ingenuous construction of the charter and other relevant statute provisions can there be found any indication that the legislature intended to confer this power upon the city. If we apply the rule of strict construction upheld by the great weight of authority in such cases, this lack of authority on the part of the city is still more obvious.

*By the Court.*—The judgment of the municipal court is reversed, and the cause remanded with directions to dismiss the prosecution.