[No. 9661.  Department One.  November 4, 1911.]

THE STATE OF WASHINGTON, *on the Relation of
C. W. Clausen, State Auditor, Respondent,* v.
CHARLES A. BURR, *Auditor for Thurston
County, Appellant.*[1]

MUNICIPAL CORPORATIONS — POWERS — LOCAL SELF-GOVERNMENT—
CONSTITUTIONAL LAW—LEGISLATIVE POWERS. Municipal corporations
have only such exclusive powers of local self-government as are con-
ferred upon them by the constitution, and except as otherwise pro-
vided in the constitution, the same are within the control of the
legislature.

MUNICIPAL CORPORATIONS—REGULATION—TAXATION—EXAMINATION
OF ACCOUNTS—PAYMENT—STATE OFFICERS. Rem. & Bal. Code, § 8356
*et seq.*, as amended by Laws 1911, p. 180, which provides for a state
bureau of inspection to secure a uniform system of accounts, em-
powered to make examinations of the accounts and records of all
county and city officers at the expense of such local municipalities,
does not violate Const., art. 11, § 12, providing that the legislature
shall not impose taxes upon counties, cities or other municipal cor-
porations, or their inhabitants, but may by general laws vest such
power in the corporate authorities; since the purpose of the law
to secure a uniform system of bookkeeping and accounting, and
supervision thereof, is a matter of public concern incidental to the
municipality as an agency of the state, and not merely a matter of
local self-government (FULLERTON and GOSE, JJ., dissenting).

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered June 9, 1911, granting a
writ of mandate to compel a county auditor to issue warrants
in payment of a state examination and auditing of the public
accounts of a city.  Affirmed.

*John M. Wilson (Scott Calhoun* and *C. E. Claypool,* of
counsel), for appellant.

*The Attorney General* and *J. T. S. Lyle, Assistant,* for
respondent.

DUNBAR, C. J.—This case involves the constitutionality
of § 11 of chapter 76, of the Laws of 1909, page 142 (Rem.

[1]Reported in 118 Pac. 639.

& Bal. Code, § 8356), as amended by chapter 30 of the Laws of 1911, page 108. In this act the legislature has provided for the creation of a bureau, for the purpose of requiring the ministerial duties imposed on public officers by the state laws and local orders, ordinances, and resolutions to be performed in a uniform and systematic manner; and provided for an examination of the public offices under state authority, to determine whether the state laws and local orders, ordinances, and resolutions have been carried out as required by law. The particular portion of the law over which this controversy arises is as follows:

"The expense of auditing public accounts shall be borne by each taxing district for the auditing of all accounts under its jurisdiction, and the state auditor is hereby authorized and empowered to certify the expense of such audit to the auditor of the county in which said taxing district is situated, who shall promptly issue his warrant on the county treasurer payable out of the current expense fund of the county, said fund, except as to auditing the financial affairs and making inspection and examination of the county, to be reimbursed by the county auditor out of the money due said taxing district at the next monthly settlement of the collection of taxes, and to be transferred monthly by the county treasurer to the current expense fund: Provided, That when such examiners are used in auditing the accounts of state officers and institutions, they shall be paid by the state."

The respondent, as state auditor, commenced this action by filing his petition for writ of mandamus against the county auditor of Thurston county, alleging services under the law referred to, which included the examination of the accounts of the municipality of the city of Olympia, and the refusal of the auditor to pay such expenses under the provisions of the law. The appellant demurred to the petition in mandamus, urging the unconstitutionality of the act of the legislature referred to in the petition, in so far as the method of payment of the examiners was concerned. The demurrer was overruled. The appellant elected to stand upon the de-

murrer, refused to plead further, the writ issued, and this appeal is prosecuted from the judgment.

It will be seen that the sole question involved is whether § 11 of chapter 76 of the Laws of 1909 (Rem. & Bal. Code, § 8356), violates any of the provisions of our state constitution. Appellant admits that the state is exercising its constitutional police power in providing for the uniformity of public accounts in the various taxing districts of the state, and that it does not exceed its reserved powers under the constitution in providing a proper audit of the accounts of all such taxing districts; but objects simply to the method of payment of such examiners, as being in contravention of the provisions of the constitution. The principal provision of the constitution to which we shall refer is § 12 of art. 11:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

The question of local self-government is one which has engaged the attention of the courts since the formation of the Union. A few states have adopted the view that the municipalities have an inherent right to local self-government not dependent upon legislative authority, and that this right was brought to this country from the rule adopted in the Anglo-Saxon countries from which our laws descended. This view is entertained by the courts of Indiana, Kentucky, and Michigan; while practically all the rest of the jurisdictions hold that municipal corporations have only such power as is conferred upon them by the legislature, and that the legislature, in the absence of constitutional inhibition, controls such municipalities absolutely. This is the view of the supreme court of the United States, which, in *Barnes v. District of Columbia*, 91 U. S. 540, held in substance that a municipal corporation was but a department of the state, and that the legislature

could give it all the powers it was capable of receiving, or that it might deprive it of every power, leaving it a corporation in name only, and could create and re-create changes in its government as it chose. In addition to the overwhelming weight of authority, this is the view that has been taken by this court. In *Meehan v. Shields*, 57 Wash. 617, 107 Pac. 835, in discussing the constitutionality of the state aid road law and in commenting thereon, it was said:

"Our constitution is a limitation of power, and such rights and powers of local government as are not conferred upon counties by the language of the constitution remain with the state and may be exercised by the legislature as the law-making power of the state. Rules and regulations for local county government and control, except as otherwise provided for in the constitution, are as much within the control of the state as those matters which are more general and statewide."

There seems to be no distinction in the power of the state over municipal corporations, whether counties, towns, or cities. So that we start out with the announcement that the law in question is legal if it is not in contravention of some constitutional enactment. But the demand of the state for this money is not for county, city, town, or other municipal purposes, in the sense in which the language is used in the constitution, or in the sense in which those terms are generally understood. The inhibitory provision evidently has reference to the ordinary purposes for which taxes are levied, viz., for erecting and operating light plants, for bringing water into the city, constructing sewers, improving streets, and various different matters or enterprises which are for the sole benefit or enjoyment of the municipality and its inhabitants. In other words, such municipalities are guaranteed the right to carry on their strictly domestic or municipal business in their own way without interference from the state.

This view we think is overwhelmingly supported by the authorities. The appellant cites the following from 2 Cooley on Taxation (3d ed.), p. 1294:

"Of all the customary local powers, that of taxation is

most effective and most valuable. To give local government without this would be little better than a mockery. If any state has the power to withhold it, the exercise of such a power would justly be regarded as tyranny. Indeed, local taxation is so inseparable an incident to republican institutions that to abolish it would be nothing short of a revolution."

While this language is strong, its application is to local taxation, as we have indicated, and this is shown by the subsequent announcements of the author, where it is said, following the announcement above:

"By local taxation here we do not mean that which is exercised for state purposes. . . . No local community has any inherent right to decide for itself whether it will or will not bear its share of the state burdens, and obviously the state could not afford to confer the right."

The distinguishing idea is that, in matters which do not concern the inhabitants of the municipality alone, the municipalities are acting as agencies for the government, and that they can be compelled to carry out the schemes of the state looking towards good government. The author proceeds to say that a city or township could no more be left at liberty to decline taxation for police purposes when the police laws and police force and the tax which supports them are made local by the law, than if all were general; that the police organization of the state is really general, however it may vary in different localities, and the obligation to support it is general, however it may be apportioned; and cites the instance of the state compelling municipal corporations to maintain roads and bridges at their own expense, because such roads and bridges are subjects of general concern to the people of the whole state, and in some instances to streets that are of state importance; also, to carry into effect systems of public construction, on the theory that the state at large is interested. And any tax may be enforced against the municipality at its own expense where the subject of the public health is involved, and where the subject is under the control of the board of health appointed by the state; and it

is said that this power is frequently exercised for the con-
struction of drains and levees.   The legislature has power
and does, in this state and in all others having the same ju-
dicial system, compel the different counties to pay the ex-
penses of judges of the superior court who are assigned to
the exercise of duties in counties outside of their own judicial
districts, although such judges are state officers and perform
their duties under the authority of the state law.   This
power certainly cannot be gainsaid, and the power challenged
in this case is identical in principle, both being based upon
the power of the state to carry into effect any scheme or
system for the benefit of the people of the state at large, and
to provide for the expenses necessarily incident thereto.

It was the view of the legislature, embodied in this law, that
it would be desirable for the state to promote a uniform
system of bookkeeping and accounting, and that, in order
to do this, it would be necessary to have state supervision
over such system.   It can readily be seen that it indirectly
affects the state at large.   It has a tendency to detect and
prevent the commission of crime, thus bringing it directly
within the police power of the state.   A proper system of
accounting, with proper supervision, tends to prevent de-
falcations and embezzlement, and the loss to the public of
public funds in many ways that can readily be conceived;
and the state, in the exercise of this power or duty and in
providing the method, is in no way impinging upon the con-
stitutional rights of the municipalities to local self-govern-
ment; but, in this and kindred cases, the municipality is
simply an agency of the state in carrying out the provisions
of a state policy and the apportionment of the expenses
thereof.   In discussing this question, it is said by Dillon on
Corporations (5th ed.), vol. 1, page 153, that the administra-
tion of justice, the preservation of the public peace and the
like, although confided to local agencies, are essentially mat-
ters of public concern; while the enforcement of municipal
by-laws proper, the establishment of local gas works, of local

water works, the construction of local sewers and the like, are matters which ordinarily pertain to the municipality as distinguished from the state at large. In *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609, it was said by the court:

"We think the constitutional provisions invoked by appellants must be held to relate to the imposition of taxes concerning ordinary corporate affairs incidental to the existence of the organized corporation."

The expenses which are called in question here are not incidental to the existence of the organized corporation, but are incidental to the municipality as an agency of the state.

The constitution of the state of Nebraska provides, among other things, that the legislature shall not impose taxes upon municipal corporations, or the inhabitants or the property thereof, for corporate purposes; which, it will be seen, is substantially the same as the provisions of our constitution; and it was held by the court in the case of *State ex rel. Haberlan v. Love* (Neb.), 131 N. W. 196, that an act of the legislature providing for the pensioning of the paid fire department in cities of the first class, whenever any of the firemen had served for the period of twenty-one years, said pensions to be paid by the city in the same manner as firemen upon the active list were paid, and requiring the city to pay the pensions provided for in the act, was not the imposition of a tax for such local purposes as were prohibited by the constitution. The constitution of the state of Missouri, art. 10, § 10, provides:

"The general assembly shall not impose taxes upon counties, cities, towns or other municipal corporations . . . but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes;"

and in testing the constitutionality of the act of the legislature placing the police department of the city of St. Louis under a metropolitan police board appointed by the government, and with authority upon the part of this board to require expenses of this department to be paid by the city, and

making it the duty of the common council to make the necessary appropriation for maintaining the police board, it was held in *State ex rel. Hawes v. Mason,* 153 Mo. 23, 54 S. W. 524, that this law did not violate the provisions of the constitution quoted. It would be difficult to distinguish that case from the case at bar.

We also cite in support of this view of the law, in addition to the authorities cited, viz., Cooley and Dillon, where the authorities are cited at length, the case of *Davock v. Moore,* 105 Mich. 120, 63 N. W. 424, and *State ex rel. Guilbert v. Shumate,* 72 Ohio St. 487, 74 N. E. 588. Without specially reviewing the other contentions of the appellant in relation to the unconstitutionality of the act, we are satisfied that there is no constitutional inhibition of any kind against the enactment and enforcement of this law. The policy or impolicy of the law we will not discuss, it being no concern of the courts. Those are subjects for the investigation and determination of the law-making power.

The judgment is affirmed.

PARKER and MOUNT, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. The majority hold, as I understand them, that the clause of the constitution forbidding the legislature to impose taxes upon counties, cities, towns, or other municipal corporations for county, city or town purposes, does not forbid the levying of taxes on such municipalities for state purposes. This proposition I think may be conceded. But conceding it, I am unable to understand how it authorizes the tax in question. If these examiners are state officers they must be paid by the state out of the state funds collected as other state taxes are collected. The legislature can no more impose the burden of supporting them upon the separate municipalities of the state than it can impose the burden of supporting the governor on the county of Thurston, the secretary of state on the county of Pierce, or the state auditor

on the city of Seattle.    Taxation for state purposes, under
the constitution, must be uniform and equal on all property
in the state according to its value in money (Const., art. 7,
§ 2); it must be paid in money only, and into the state treas-
ury (Const., art. 7, § 6); and can be paid out only on legisla-
tive appropriation.    This law violates all of these provisions
of the constitution if these examiners are state officers.    It
imposes their support directly upon the separate municipal-
ities of the state; it collects money for state purposes without
having it paid into the state treasury; and it imposes taxes
upon the property of the state for state purposes other than
by a uniform and equal rate of taxation.    In my judgment
the act is unconstitutional.

GOSE, J., concurs with FULLERTON, J.