Argued July 6, reversed July 20, 1915.
Argued on rehearing March 3, affirmed April 25, 1916.

# PORTLAND v. PORTLAND GAS & COKE CO.*

### (150 Pac. 273; 156 Pac. 1070.)

Gas—License "Tax."

1. Where a city provided by ordinance that every person or corporation furnishing gas should pay a "license" of 3 per cent of its gross receipts, confessedly a revenue measure, the imposition was a "tax," however. characterized.

Statutes—Repeal by Implication.

2. The repeal by implication of a former by a latter act is not favored.

[As to repeal of statute by implication, see note in 88 **Am. St. Rep.** 271.]

Gas—Franchise Tax on Gas Producers—Validity—Statutes.

3. Portland City Charter, Section 3, grants the city all governmental powers, except those expressly conferred on other public corporations. Section 73, subdivision 21, empowers the council to grant licenses to raise revenue, and to fix by ordinance the amount to be paid. An ordinance was enacted levying a "license tax" of 3 per cent of the gross receipts on all concerns selling gas. Section 3552, L. O. L., as amended by acts of 1913, includes within the terms "land, real estate, and real property" all franchises and privileges owned by any corporation, except the right to be a corporation. Title XXVIII, Chapter 8, L. O. L., embodying the general scheme ·of state taxation, especially Section 3670, requires that all taxes levied by any municipality shall be imposed according to the value of the property shown by the last assessment-roll, that they shall be collected by the county collector at the rate declared by the city, and the amount returned to the municipality. Defendant gas company refused to pay the "license tax" levied by ordinance, contending that under Section 3552 its franchise had been taxed as real property, so that the new exaction was double taxation, and that the procedure of Chapter 8 for the collection of municipal taxes was exclusive and the license ordinance invalid. *Held* that the procedure of Chapter 8 referred only to assessable property to be taxed *ad valorem*, and did not treat of taxes on privileges independent of tangible property; that the legislation chartering the city, enacted in 1903, should be construed with Section 3552, enacted in 1907, if possible, since repeals by implication are not favored; and that such section, relating only to tangible property, did not preclude the city from exacting the license tax under its charter.

[As to constitutional limitations on power to impose license taxes, see note in 129 Am. St. Rep. 249.]

*As to whether taxation of business or occu 'ion of a public service corporation and of its franchise or right to occupy the streets is double taxation, see note in 28 **L. R. A. (N. S.)** 221.        REPORTER.

**Gas—License Tax on Gas Company—Validity—Statutes.**

4. *Held,* also, that, if the license tax were a burden on the property itself, it was nevertheless valid as a tax on defendant's franchise to be a corporation as property, distinct from the franchise, such as the right to acquire property by eminent domain, exercised by the corporation as such, the franchise to be generally taxable as a privilege, also as property, while Section 3552, L. O. L., expressly excludes such franchise from the category of real property.

**Gas—License Tax on Gas Company—Validity—Statutes.**

5. *Held,* also, that the tax was valid as an occupation tax on all persons selling gas in the city, its object being confessedly to provide additional revenue, for a state or municipality may impose an *ad valorem* tax on property used in a calling and also impose a license tax as a condition to the right to carry on the pursuit.

**Municipal Corporations—Tax on Property—Gas Franchise.**

6. An ordinance of the City of Portland, operating under a legislative charter (Sp. Laws 1903, p. 3) requiring every person or corporation engaged in furnishing gas for commercial purposes to pay the city a license of 3 per cent of the gross receipts upon its business within the city, could not be sustained as a tax on property, because the city could not levy a property tax for general purposes, except on the property and in the manner pointed out by general laws.

**Licenses—Franchise Tax—Validity—Charter.**

7. Such ordinance could not be upheld as a license, or as a tax on business, because it was not an exercise of the power conferred by the charter (Sp. Laws 1903, p. 29, § 73, subd. 21), empowering the council to grant licenses to raise revenue and to fix by ordinance the amount to be paid.

**Municipal Corporations—Tax—Constitutional and Statutory Provisions.**

8. The charter of the City of Portland (Sp. Laws 1903, p. 3), Section 3 of which granted the city all governmental powers except those expressly conferred on other public corporations, and Section 74 of which provided that the enumeration of particular powers should not be construed to impair any general grant of power enacted when Article XI, Section 5, of the Constitution declared that acts of the legislative assembly incorporating cities should restrict their powers of taxation, and prior to the constitutional amendments, known as Section 2 of Article XI and Section 1a of Article IV, was not intended to vest a power of taxation at large, so that the city might reach out and assume the power to tax without limitations or restrictions.

**Municipal Corporations—Ordinance—Conformity to Charter—Local, Special and Municipal Legislation.**

9. Under Article IV, Section 1a, of the Constitution reserving to the voters of every municipality the initiative and referendum as to all local and special municipal legislation, and Article XI, Section 2, conferring upon a city the power to enact or amend its charter, subject to the Constitution, it is necessary for a city to trace its rights to legislate to some provision of its charter; the words "local, special, and municipal legislation" not meaning that a municipality can legislate unto itself a power to legislate.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is an action by the City of Portland against the Portland Gas & Coke Company.  By virtue of an ordinance hereinafter mentioned to provide additional revenue for the City of Portland, this action was instituted to recover a 3 per cent license tax upon the gross receipts of the defendant as a corporation engaged in the business of selling gas in the city.

Upon a demurrer to the complaint, the court rendered judgment for the defendant, from which the plaintiff appeals.                          REVERSED.

For appellant there was a brief over the names of *Mr. Henry A. Davie* and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Davie.*

For respondent there was a brief over the names of *Mr. William W. Cotton, Mr. James G. Wilson, Mr. H. W. Strong* and *Mr. John A. Laing,* with an oral argument by *Mr. Cotton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In respect to the matters involved in this action, the City of Portland operates under a charter formulated by an act of the legislative assembly of the state approved January 23, 1903.  Section 3 thereof reads thus:

"The City of Portland shall be invested within its limits with authority to perform all public services and with all govermental powers except such as are expressly conferred by law upon other public corporations and subject to the limitations prescribed by the constitution and laws of the state, except as hereinafter provided."

Section 114 authorizes the council to assess, levy and collect taxes upon all property, both real and personal, not exempt from taxation within the city not exceeding seven mills on each dollar of valuation. Subdivision 21 of Section 73 empowers the council:

"To grant licenses with the object of raising revenue or of regulation, or both, for any and all lawful acts, things or purposes, and to fix by ordinance the amount to be paid therefor, and to provide for the revoking of the same. No license shall be granted to continue for a longer period than one year from the date thereof. All money received from licenses for vehicles of every description, whether for pleasure or for business, shall go to the credit of the street repair fund, but the council may in its discretion set aside the moneys arising from licenses upon bicycles for the construction or repair of bicycle paths."

The complaint alleges the public municipal character of the plaintiff under the act of January 23, 1903, and amendments thereto, and the corporate entity of the defendant. It states:

"That the defendant is now, and during all the times hereinafter mentioned or referred to has been, engaged in the business of selling and furnishing gas for lighting, heating, fuel and other commercial purposes within the corporate limits of the City of Portland."

It is further averred that at a general city election on June 5, 1911, the legal voters duly enacted an ordinance entitled:

"An ordinance to provide additional revenue for the City of Portland; to levy a license on the gross receipts of persons and corporations selling gas, natural or manufactured, for lighting, heating, fuel or other commercial purposes within the City of Portland; defining the manner of ascertaining the nature and extent of such gross receipts; defining a person and corporation within the meaning of this ordinance,

and providing a penalty for the violation of the provisions of this ordinance."

This municipal enactment is set out at large in the complaint. After defining the word "person" to include an individual, or copartnership, and "corporation" to mean every corporation, company, association or joint-stock company, other than an individual or copartnership, the ordinance, in Section 2, reads thus:

"Every person, or corporation, engaged in the business of selling or furnishing gas, either natural or manufactured, for lighting; heating, fuel or other commercial purposes within the City of Portland, shall pay to the City of Portland, a license of three (3) per centum of the gross receipts of such person or corporation received upon its business within the City of Portland, which license shall be paid annually by said person, or corporation, to the treasurer of the City of Portland on the first day of March of each year for the preceding year ending December 31st. Provided that the payment to be made as required by this section and the statement to be made as required by Section 3 hereof on March 1, 1912, shall be upon and cover and embrace the gross receipts of any such person, or corporation, between the date this ordinance takes effect and December 31, 1911."

In substance, Section 3 requires persons in charge of the business named to make a sworn statement on or before March 1st of each year of its gross receipts, and declares the 3 per cent demand to be a debt recoverable by an action at law in the name of the City of Portland in any court having competent jurisdiction. A penalty is imposed upon the persons charged with that duty for failure to make the report. It is averred that the resident officers of the defendant company made a statement showing that its gross receipts from June 6, 1911, to December 31st of the same year amounted to $587,639.47, but that the defendant has

utterly failed to pay any part of the 3 per cent thereof as required by the ordinance.

1. It is contended by the company, and conceded by the city, that the exaction contemplated by the ordinance is a tax, for the reason that no regulation under the police power is attempted by the city enactment. On the contrary, it is confessedly a revenue measure, and this being true, by whatever term it may be characterized, whether license, or public burden, or enforced contribution, it is none the less a tax. The precise question presented is whether the city has the right to levy such a tax.

2, 3. The defendant argues that the exaction attempted was one levied upon the defendant's franchises; that, inasmuch as these privileges were taxed under the general laws, the assessment of which was adopted as a basis for the city taxes, the demand provided for by the ordinance in question amounted to double taxation in favor of the city. Under Chapter 268 of the Laws of Oregon for 1907, reproduced in Section 3552, L. O. L., as amended by the act of February 26, 1913 (Laws 1913, p. 325), there is included within the terms "land, real estate and real property," "all franchises and privileges granted by or pursuant to any law of this state, or municipal ordinance or resolution, owned or used by any person or corporation, other than the right to be a corporation." The general scheme of state taxation embodied in Chapter 8 of Title XXVIII, L. O. L., especially in Section 3670, requires that all taxes levied by any incorporated city or town shall be imposed upon the property therein respectively assessable according to its valuation as shown by the assessment-roll last compiled by the county assessor, and that they shall be collected by the county tax collector at the rate declared by the city

authorities, and the amounts collected returned to the proper municipality. From the legislation mentioned the defendant would deduce two conclusions: (1) That its franchises have been taxed as real property and collection worked out through the county tax collector for the benefit of the city, and that to enforce the ordinance in question would amount to double taxation upon the same property; and (2) that the procedure thus fashioned by the state for the collection of municipal taxes is exclusive of all other methods of raising revenue by a city, with the result that on both grounds the ordinance is void. The state law providing that the work of the county assessor in listing property should be adopted by a city as a basis upon which to collect its tax refers only to assessable things to be taxed according to their value. It does not treat of a tax upon privileges independent of tangible property. It was not the intention of the legislative assembly to cut off all sources of revenue from municipalities except an *ad valorem* tax. The legislation of 1903 incorporating a city and the enactments of 1907 relating to the levy of city taxes based upon a county assessment must both be construed to stand, if possible. The repeal of the former act by an implication supposed to be contained in the latter is not favored. Considering, therefore, that the act of 1907 relates only to property taxable on a valuation basis, we are of the opinion that it did not affect the power of the city to acquire revenue by granting licenses for any and all lawful acts, things or purposes as set out in subdivision 21 of Section 73 of the municipal charter.

4. It will be remembered that the statute classifying franchises and privileges as real property excepts therefrom the right to be a corporation. Conceding, then, for the moment that this is a burden imposed

upon the property itself, still it would be competent to tax the franchise to be a corporation, for that portion of its granted privileges is clearly distinguishable from others which it might acquire by purchase or by the right of eminent domain. It is said, in Section 47a of Gray on Limitation of Taxation Powers, that:

"The franchise to be is generally taxed as a privilege. Doubtless in view of the general rules with respect to taxation of franchises it may also be taxed as property."

And the author, indorsed by many precedents, makes a clear discrimination between the franchise to be and the franchise to do. The legislative assembly has observed the same distinction, putting the latter in the category of real property and leaving the question open as to the former. As stated by Mr. Justice MATTHEWS in *Memphis R. Co.* v. *Commissioners,* 112 U. S. 609 (28 L. Ed. 837, 5 Sup. Ct. Rep. 299):

"The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges, vested in and to be exercised by the corporate body as such, are the franchises of the corporation."

Looking at the matter of franchise as one of property from the *ad valorem* viewpoint, and remembering that according to its charter the city is invested within its limits with "all governmental powers," we hold that it would be admissible to tax as property that part of the defendant's franchise authorizing it to be a corporation; for that is expressly excluded by the state legislation from the category of real property.

5. The city, however, has not attempted to impose an *ad valorem* tax even upon the franchise of the defendant to be a corporation. Stripped of the euphemism

of license, the ordinance in question must be construed as attempting to levy an occupation tax upon all persons and corporations engaged in the business of selling or furnishing gas within the City of Portland. Confessedly the object of the city legislation was to provide additional revenue. It does not attempt any regulation whatever on the manner in which the business shall be conducted. The municipality was given authority by its charter to grant licenses with the object of raising revenue. This amounts to nothing different from saying it had a right to impose an occupation tax. It is plain that if an individual, having no right to lay a main in the street, or any other privilege of that kind, should engage in the city in the business of selling gas compressed into tanks, it would be permissible for the municipality to levy an occupation tax upon him in addition to the property tax upon the appliances which he might use in the manufacture of the commodity. In like manner it could levy a tax according to value upon the teams, wagons and other vehicles used by transfer or express companies operating in the city, and in addition thereto might levy an occupation tax for the use of those very teams and vehicles. The right of the defendant corporation to do business at all in the city is referable to the franchise to be a corporation, for without that portion of its grant giving it identity as an artificial being it could not engage in any transaction whatever. It is quite as permissible to impose an occupation tax upon this conventional personage for the privilege of doing business in the city as it is upon a natural individual engaged in the same or similar enterprise. It is said by Mr. Justice BEAN, in *Oregon* v. *Pacific States T. & T. Co.*, 53 Or. 162, 164 (99 Pac. 427, 428):

"The annual license fee required by the act of 1903 to be paid by corporations is a business or excise tax on the right to be or exercise the powers of a corporation, and is in no sense a tax on property; nor is it a tax on the business or franchise which the corporation, when organized, may exercise. * * The right to be a corporation, or do business as such, rests entirely within the discretion of the state, and it may therefore require it to pay a specified sum each year, or at stated intervals, for the privilege. The payment of such fee or tax, however, does not exempt the corporation from other forms of taxation. It may be also required to pay a tax on its tangible property and a tax on its intangible property or franchise, the latter to be in proportion to its income or measured in any other way the lawmaking power may adopt."

In *New Jersey* v. *Anderson*, 203 U. S. 483 (51 L. Ed. 284, 27 Sup. Ct. Rep. 137), the question was about the nature and validity of the franchise tax imposed by the State of New Jersey upon the Cosmopolitan Power Company, a corporation. The company was organized under the laws of that state, had its principal office there, but had no property in New Jersey. It conducted all its business and had all its holdings in the State of Illinois. Much like the ordinance here in question, the New Jersey statute required the company to make a statement of its business and pay a license fee or franchise tax of a certain per cent on its capital stock. Having failed to render the statement, the authorities levied a tax and presented the claim to the assignee in bankruptcy of the company. The Supreme Court of the United States, speaking by Mr. Justice DAY, after discussing the question, says:

"Without undertaking to analyze these numerous cases or to harmonize the views expressed by different judges, we think the weight of judicial decision in that state favors the view that this is a tax imposed upon the right of the corporation to continue to be a corpora-

tion, with power to exercise its corporate franchises, based upon the amount of its capital stock issued and outstanding.''

It is well established by the authorities that it is not double taxation to impose an *ad valorem* tax upon the property of a corporation or individual and likewise to prescribe a tax for the use of the same property all for the purpose of revenue. The one is a direct property tax, and the other is a privilege or occupation tax. The rule is thus succinctly stated in Section 1410, Dillon on Municipal Corporations (5 ed.):

''The state or the municipality under statutory authority may collect an *ad valorem* tax upon property used in a calling and may at the same time impose a license tax on the pursuit as a condition of the right to carry on that pursuit, and the fact that both the property and the business or pursuit are taxed does not constitute double taxation'': *Goldsmith* v. *Huntsville,* 120 Ala. 182 (24 South. 509); *Kentz* v. *Mobile,* 120 Ala. 623 (24 South. 592); *Florida Cent. & P. R. Co.* v. *Columbia,* 54 S. C. 266 (32 S. E. 408); *Ex parte Hoffert* (S. D.), 148 N. W. 20 (52 L. R. A. (N. S.) 949); *Salt Lake City* v. *Christensen Co.,* 34 Utah, 38 (95 Pac. 523, 17 L. R. A. (N. S.) 898); *Jackson* v. *Neff,* 64 Fla. 326 (60 South. 350); *Mark* v. *District of Columbia,* 37 App. D. C. 563 (37 L. R. A. (N. S.) 440); *Blackrock Copper M. & M. Co.* v. *Tingey,* 34 Utah, 369 (98 Pac. 180, 131 Am. St. Rep. 850, and note, 28 L. R. A. (N. S.) 255).

We conclude, therefore, that the inclusion of its franchises, except the right to be a corporation, in the category of real property, does not exempt the defendant from the character of exaction for revenue purposes set out in the ordinance here involved. We hold, also, that the city legislation provided for an occupa-

tion tax which might be imposed without any reference to regulation as a purely revenue measure. With the amount or reasonableness of the demand we have nothing to do upon the demurrer to the complaint. The sole question which we undertake to decide upon the issue as here presented is that the city has a right to impose a tax of the kind mentioned upon the privilege of doing business in the city as a dealer in gas.

The judgment of the Circuit Court is reversed and the cause remanded for further proceedings.

REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

Argued March 3, affirmed April 25, 1916.

ON REHEARING.

(156 Pac. 1070.)

In Banc.   Statement by MR. JUSTICE HARRIS.

At an election held on June 5, 1911, the legal voters of the City of Portland adopted an ordinance which requires "every person, or corporation, engaged in the business of selling or furnishing gas, either natural or manufactured, for lighting, heating, fuel or other commercial purposes within the City of Portland" to pay the city "a license of three (3) per centum of the gross receipts of such person or corporation received from its business within the city." The defendant refused to pay, and the city commenced an action to recover for the period commencing June 6, 1911, and ending December 31, 1911. After alleging the corporate character of the plaintiff, and that the defendant is a private corporation engaged in selling gas, the complaint

recites the ordinance *in extenso,* alleges the amount of the gross receipts during the period mentioned, and demands judgment for the tax and penalty provided for in the ordinance.

A demurrer to the complaint was sustained, and, the plaintiff having elected to stand upon its complaint, the court granted the defendant a judgment for its costs and disbursements. The city prosecuted an appeal from the judgment, and after holding that the complaint was sufficient (*City of Portland* v. *Portland Gas & Coke Co., ante,* p. 194 (150 Pac. 273), we granted a petition for a rehearing. Since the rendition of the first opinion we have not only heard a reargument of this cause, but we have also heard the oral arguments and examined the briefs in *Portland* v. *Portland Ry., L. & P. Co.,* which involves every question presented here. Fourteen printed briefs, filed in the two cases, not only display an exhaustive research of the authorities, but they also record the last word which the industry and ingenuity of counsel can suggest in support of their respective contentions.

AFFIRMED ON REHEARING.

For appellant there was a brief over the names of *Mr. Henry A. Davie* and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Davie.*

On rehearing there was a brief submitted for the respondent over the names of *Mr. William W. Cotton, Mr. James G. Wilson, Mr. H. W. Strong* and *Mr. John A. Laing,* with an oral argument by *Mr. Cotton.*

MR. JUSTICE HARRIS delivered the opinion of the court.

6, 7. The opinion which was delivered to-day in *Portland* v. *Portland Ry., L. & P. Co.,* 156 Pac. 1058, is de-

cisive of the instant case. The two ordinances were adopted by the same voters at the same election, and they are identical in terms, except that one applies to the sale of gas and the other to the sale of electricity. Applying the principles announced in *Portland* v. *Portland Ry., L. & P. Co.,* the ordinance concerning the sale of gas is void. It cannot be sustained as a tax on property, because the city cannot levy a property tax for general purposes, except on the property and in the manner pointed out by general laws. The ordinance cannot be upheld as a license, or as a tax on business, because it is not an exercise of the power conferred by subdivision 21 of Section 73 of the charter. It is not necessary to indulge in any extended discussion of the instant case, for the reason that every issue raised here is examined at some length in the opinion relating to the tax on receipts derived from the sale of electricity; and since all that is said there concerning the power of the city to levy a property tax, as well as all that is stated about the right of the city to impose a tax or license on a business, applies here, the principles announced there will not be elaborated upon.

8. Supplementing, however, the discussion concerning the cotention of the city that Sections 3 and 74 endow the city with authority to pass the ordinance, attention is now called to Section 5 of Article XI of the State Constitution:

"Acts of legislative assembly incorporating towns and cities shall restrict their powers of taxation. * * * " .

The ordinance in question was submitted to the legal voters at a time when the legislative charter of 1903 was still in force. The charter of 1903 was enacted by the legislature prior to the adoption of the constitutional amendments known as Section 2 of Article XI

and Section 1a of Article IV. When it is remembered that the language of Section 5 of Article XI imperatively commanded the legislature not to confer upon municipalities unrestricted powers of taxation, by no fair rule of construction can it be said that the law-making body by Sections 3 and 74, when read in the light of the rest of the charter, intended to set the power of taxation at large, so that the municipality might reach out and assume unto itself the power to tax without limitation or restriction; and, moreover, Section 3 expressly provides that it is "subject to the limitations prescribed by the Constitution and laws of the state."

9. The contention, persistently made by the city, that it is not necessary to trace its right to legislate to some provision of its charter, is set at rest by *Robertson* v. *Portland,* 77 Or. 121 (149 Pac. 546). A charter is requisite now to the same extent as it was before the adoption of Section 2 of Article XI and Section 1a of Article IV, as those sections now appear in our Constitution. The power of a city to enact or amend its charter is conferred by Section 2 of Article XI, and the very language of that section implies the necessity of a charter. Section 1a of Article IV does not empower a city or other municipality to take unto itself any municipal authority; the words "local, special and municipal legislation," found in this section of the Constitution, do not mean that a municipality can legislate unto itself a power to legislate: *State ex rel.* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399, 407). None but a city or town can legislate unto itself a power to legislate, and that privilege exists because of Section 2 of Article XI.

The judgment entered by the Circuit Court is affirmed.                 AFFIRMED ON REHEARING.

MR. JUSTICE EAKIN absent.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

The opinion of Mr. Justice HARRIS on rehearing, affirming the Circuit Court in sustaining the demurrer to the complaint, is based upon the views he expressed in *Portland* v. *Portland Ry., L. & P. Co.* An analysis of this latter opinion shows that it depends very largely, if not exclusively, upon the new matter in the answer. In the present case the issue of law is waged upon a demurrer to the complaint. That pleading contains no intimation of the various defenses set up in the other case. The only feature in common between these two cases is the applicability of subdivision 21 of Section 73 of the Portland charter, stating the powers of the council and reading in part thus:

"To grant licenses with the object of raising revenue or of regulation or both for any and all lawful acts, things or purposes and to fix by ordinance the amount to be paid therefor, and to provide for the revoking of the same. No license shall be granted to continue for a longer period than one year from the date thereof."

The opinion seems strictly to construe the term "license," and to teach that the only way in which the city could exercise the authority conferred by the subdivision quoted would be to say that it shall be unlawful for any person or corporation to sell gas in the City of Portland without paying a license of 3 per cent of the gross receipts of the business, and to impose a

80 Or.—14

penalty for the violation of such ordinance. The *Laundry Case* (D. C.), 22 Fed. 701; *Reser* v. *Umatilla County,* 48 Or. 326 (86 Pac. 595, 120 Am. St. Rep. 815), and *Home Ins. Co.* v. *Augusta,* 50 Ga. 530, are cited in support of this doctrine. In the first of these cases Judge DEADY held that the power to "regulate and control washhouses and public laundries" justified a reasonable license fee to cover the expense of issuing a permit, but did not authorize any excess of that amounting to a revenue or tax. This construction of that charter provision is much shaken, if not entirely overthrown, by the decision of this court in *Abraham* v. *Roseburg,* 55 Or. 359 (105 Pac. 401, Ann. Cas. 1912A, 597), where it was decided that "to license and regulate all such callings, trades and employments as the public good may require to be licensed and regulated" was broad enough to sanction a revenue measure framed under such a charter provision. Besides, Judge DEADY put his decision of the *Laundry Case* on the ground that:

"A power to license should be used only for regulation unless there is something in the language of the grant or the circumstances of the case clearly indicating that it was also intended to be used for the purpose of revenue."

Taking the language of his opinion thus quoted as the reason for his judgment, we have ample ground to distinguish the instant case from the question under his consideration. Since the present Portland charter gives authority to impose licenses "with the object of raising revenue or of regulation or both," the *Laundry Case* is no obstacle to the purpose of the ordinance in question, for the intention to provide revenue by a license system is plainly expressed in the excerpt quoted above. The present case would be like *Reser*

v. *Umatilla County*, if the statute had attempted to charge dealers in gas a certain amount on every cubic foot of that article which they sold. The *Reser Case* declared that a specific sum charged upon each sheep driven into Oregon from another state for pasturage here was a tax, and hence void for want of uniformity on an *ad valorem* basis. This is not applicable to the present contention for that reason. The *Home Insurance Case* says:

"A license is a right granted by some competent authority to do an act which without such authority would be illegal."

This is sound lexicology, but it is curious to observe that in that very case the court refused to enjoin the collection of what was called "a license tax," an exaction practically the same as the city would enforce in the present instance.

To place the decision on a strict technical definition of the word "license," without regard to the wider scope of the charter provision, is in my judgment to sacrifice substance for form. The declared object of the provision, among others, is that of raising revenue. It may be coupled with regulation, or not, in the discretion of the council. The power may be applied to lawful acts, things, or purposes. These are lawful to begin with, and it is not necessary, for revenue purposes, at least, to declare them unlawful as a means of collecting taxes. In construing this statute we must look at the substance as well as the letter. As said by Mr. Justice HOLMES in *Galveston etc. Ry. Co.* v. *Texas*, 210 U. S. 217 (52 L. Ed. 1031, 28 Sup. Ct. Rep. 638):

"Neither the state courts nor the legislatures, by giving the tax a particular name, or by the use of some

form of words, can take away our duty to consider its nature and effect.''

True, it is that, if the city chose to do so, it could grant a permit to a person or corporation to sell gas within the municipal boundaries, providing a certain fee was paid for the privilege, and could enforce the same by some form of punishment, including the revocation of the license. Even then payment of the fine would not liquidate the tax imposed. But these powers and the manner of their exercise are permissive. Considered as a revenue measure, the subdivision mentioned establishes an occupation tax. Invested as it is with authority to perform all public services and with all governmental powers, the City of Portland could provide any other lawful procedure for enforcing the payment of the impost upon the occupation of the defendant. As well it might, it has chosen a means of collection by an action against the delinquent who fails to pay the license charge prescribed by the ordinance. The same result is attained as though it had chosen to issue a paper to be styled ''a license to sell gas,'' and provided for a fine or other lawful punishment for doing business without such a document. The legislation devised by the city to enforce the occupation tax under the name of license is within the reason and spirit of subdivision 21 of Section 73. The question of the tax being exorbitant and confiscatory is not before us in this suit. We are not at liberty to divine what defenses the defendant may be able to present, nor to suppose they will be the same as those urged in the other case. The complaint states a cause of action and is not amenable to the general demurrer.

For these reasons, I am unable to assent to the conclusion reached by my learned Brother.

Mr. CHIEF JUSTICE MOORE concurs in this dissent.