THE BEST FOODS, Inc., v. CHRISTENSEN,
State Treasurer, et al.

No. 4961. Decided February 6, 1930. (285 P. 1001.)
Rehearing Denied March 13, 1930.

*George P. Parker,* Attorney General, and *Byron D. Anderson,* Assistant Attorney General, for appellants.

*Badger, Rich & Rich,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This appeal requires that we answer but a single question, viz. Do the provisions of chapter 91, Laws Utah 1929, violate section 5, art. 13, of our state Constitution? Each of the four plaintiffs brought a suit in the district court of Salt Lake County to enjoin the treasurer and auditor of the state of Utah, the county commissioners of Salt Lake county, and the board of commissioners of Salt Lake City from

enforcing the provisions of chapter 91, Laws Utah 1929. The plaintiff, The Best Foods, Inc., is a manufacturer of oleomargarine in New Jersey, Illinois, and California. The plaintiff, Owen Woodruff Company, is a wholesale distributor of oleomargarine with its principal place of business at Salt Lake City, Utah. The plaintiff I. C. Calkins is a retail merchant, and as such sells oleomargarine at Salt Lake City, Utah. The plaintiff Nellie M. Adams is a consumer of oleomargarine. She resides at Salt Lake City, Utah. The four suits were consolidated in the court below. They are all brought here for review upon one appeal. The trial court granted the relief prayed by the various plaintiffs upon the sole ground that chapter 91, Laws Utah 1929, is unconstitutional. The defendants appeal.

The act, so far as material to a determination of the questions here presented for review, reads as follows:

"It shall be unlawful for any person, firm or corporation to barter, sell or offer for sale, oleomargarine as defined in Section 1 of this Act, in the State of Utah, without first having obtained a permit therefor, which said permit may be granted and issued by the board of city commissioners of any city of the first or second class, the city council of any city of the third class, the board of trustees of any town, or the board of county commissioners in any territory outside of any city or town. Said permit shall be in force and effect for one year from and after the date of issuance, unless sooner revoked, and shall be granted only to a person, firm or corporation owning or operating the place from which such sales are to be made, which place shall be within the territorial limits of the body granting such permit. Each permit shall be numbered and shall show the residence and place of business of the permit holder, and shall not be transferable. The body issuing such permit shall, on reasonable notice and hearing, revoke the permit of any person, firm or corporation violating any provision of this Act, and no permit can be issued to such person, firm or corporation within a period of two years thereafter. The body issuing such permits, and upon revocation of any permit shall immediately certify the same to the State treasurer.

"No permit shall be issued until the applicant shall have paid to the treasurer of the city, town or county, as the case may be, an annual license fee of five ($5.00) dollars per year or fraction thereof. All such license fees shall be credited to the general fund of the city, town or county collecting the same.

"From and after the taking effect of this Act there is hereby imposed, and there shall be collected by and paid to the State treasurer, upon the sale of all oleomargarine sold in the State of Utah to consumers, the following taxes, to be paid at the time of sale and delivery to the consumer:

"Class (a). On oleomargarine not artificially colored, five cents per pound.

"Class (b). On oleomargarine artifically colored, ten cents per pound.

"Whenever a box, carton, or other container of oleomargarine is broken open and the contents offered or placed on sale, there must be attached to each pound, or other sized package, a suitable stamp denoting the tax thereon, said stamp to be cancelled under such regulations as the State treasurer shall prescribe. * * *

"The State auditor shall prepare and have suitable stamps for use on each kind of package described herein. Upon requisition from the State treasurer, the State auditor shall deliver to his order the stamps designated in such requisition and shall charge the State treasurer with the stamps thus delivered, and shall keep an accurate record of all stamps coming into and leaving his hands. The State treasurer shall sell the stamps herein provided for, only to dealers holding permits issued as provided in this Act and the moneys received from the sale of such stamps shall be turned into the general fund of the State. * * *"

Article 13, § 5, of the Constitution of Utah, reads thus:

"The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."

The defendants contend that the annual license fee of $5 which the act requires be paid into the general fund of a county, city, or town for a permit to sell oleomargarine is not a tax within the meaning of article 13, § 5, of our state Constitution. In support of such contention the following cases are cited: *Bailey* v. *Van Dyke,* 66 Utah 184, 240 P. 454; *State* v. *Camp Sing,* 18 Mont. 128, 44 P. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551; *State* v. *Union Central Life Ins. Co.,* 8 Idaho 240, 67 P. 647; *State* v. *Nelson,* 36 Idaho 713, 213 P. 358; *Trustees', Executors' & Securities Ins. Corp.* v. *Hooton,* 53 Okl. 530, 157 P. 293, L. R. A. 1916E, 602.

The plaintiffs contend (1) that there is a fundamental distinction between a license fee imposed under the police power and a license fee imposed for revenue; that a license fee imposed for revenue is a tax, regardless of the name by which it may be called; that the provision contained in Laws Utah 1929, c. 91, whereby a license fee of $5 shall be paid into the general fund of a county, city, or town for a permit to sell oleomargarine, is necessarily a provision to raise revenue for counties, cities, and towns, and hence imposes a tax for municipal purposes within the meaning of section 5, art. 13, of the Constitution of Utah, and therefore such provision is unconstitutional, and (2) that the provisions of the act levying a stamp tax of five and ten cents per pound on oleomargarine sold within the state is void because by the act stamps may be sold to permittees only; that, if there can be no legal permittees, there can be no lawful sale of stamps to place on the packages containing oleomargarine. In support of the first proposition urged by the plaintiffs, the following cases and authorities are cited: *Kimball* v. *Grantsville City,* 19 Utah 368, 57 P. 1, 45 L. R. A. 628; *State* v. *Standford,* 24 Utah 148, 66 P. 1061; *Pollock* v. *Farmers' Loan & Trust Co.,* 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108; *Patton* v. *Brady,* 184 U. S. 608, 22 S. Ct. 912, 39 L. Ed. 713; *Black* v. *State,* 113 Wis. 205, 89 N. W. 522, 90 Am. St. Rep. 853; *Hancock* v. *Singer Mfg. Co.,* 62 N. J. Law, 289, 41 A. 846, 42 L. R. A. 852; *Spokane & Eastern Trust Co.* v. *Spokane County,* 70 Wash. 48, 126 P. 54, Ann. Cas. 1914B, 641; *State of Maine* v. *Grand Trunk R. Co.,* 142 U. S. 217, 12 S. Ct. 121, 35 L. Ed. 994; *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn. 569, 260 S. W. 144; *Amos* v. *Gunn,* 84 Fla. 285, 94 So. 615; *State* v. *Norval Hotel Co.,* 103 Ohio St. 361, 133 N. E. 75, 19 A. L. R. 637; *In re Opinion of the Justices,* 123 Me. 573, 121 A. 902; *Albert Pick & Co.* v. *Jordan,* 169 Cal. 1, 145 P. 506, Ann. Cas. 1916C, 1237; *Des Moines Ry. Co.* v. *Chicago Great Western Ry. Co.,* 188 Iowa 1019, 177 N. W. 90, 9 A. L. R. 1557; *Cincinnati Milford & Loveland Traction Co.* v. *State,* 94 Ohio St. 24, 113 N. E.

654; *Union Steam Pump Sales Co.* v. *Deland, Secretary of State,* 216 Mich. 261, 185 N. W. 353; *U. S.* v. *Philadelphia B. & W. R. Co.* (D. C. Pa.) 262 F. 188; *Foster & Creighton Co.* v. *Graham,* 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971; *Cadwalader* v. *Lederer* (D. C.) 273 F. 879; *State* v. *Burr,* 65 Wash. 524, 118 P. 639; *Provo City* v. *Provo Meat & Packing Co.,* 49 Utah 528, 165 P. 477, Ann. Cas. 1918D, 530; *Matthews* v. *Jensen,* 21 Utah 207, 61 P. 303; 37 C. J. 170; 3 McQuillin on Municipal Corporations, § 991; *Royall* v. *State of Virginia,* 116 U. S. 572, 6 S. Ct. 510, 29 L. Ed. 735, page 737; *Robinson* v. *Norfolk,* 108 Va. 14, 60 S. E. 762, 15 L. R. A. (N. S.) 294, page 299, 128 Am. St. Rep. 934; *Waters-Pierce Oil Company* v. *City of Hot Springs,* 85 Ark. 509, 109 S. W. 293, 16 L. R. A. (N. S.) 1035, page 1036; *Ex parte Richardson,* 170 Cal. 68, 148 P. 213; *City of Portland* v. *Portland Gas & Coke Co.,* 80 Or. 194, 150 P. 273, page 274, 156 P. 1070; *Ex parte Mayes,* 64 Okl. 260, 167 P. 749, pages 750, 751; *City of Muskogee* v. *Wilkins,* 73 Okl. 192, 175 P. 497; *Spokane & Eastern Trust Company* v. *Spokane County et al.,* 70 Wash. 48, 126 P. 54, Ann. Cas. 1914B, 641, page 642; *State ex rel. Wyatt* v. *Ashbrook,* 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, page 268, 77 Am. St. Rep. 765; License Tax Cases, 5 Wall. 462, 18 L. Ed. 497; *Yamhill County* v. *Foster,* 53 Or. 124, 99 P. 286; *People* v. *Martin,* 60 Cal. 153, 155; License Tax Cases, 5 How. 504, 12 L. Ed. 256; *Ex parte Pfirrmann,* 134 Cal. 143, 66 P. 205, 207; *Hing* v. *Crowley,* 113 U. S. 703, 5 S. Ct. 730, 28 L. Ed. 1145; *City of Jacksonville* v. *Ledwith,* 26 Fla. 163, 7 So. 885, 9 L. R. A. 69, 79, 23 Am. St. Rep. 558; *City of Carthage* v. *Rhodes,* 101 Mo. 175, 14 S. W. 181, 9 L. R. A. 352; *Walker* v. *Jameson,* 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 681, 683, 49 Am. St. Rep. 222; *Muhlenbrinck* v. *Commissioners,* 42 N. J. Law, 364, 36 Am. Rep. 518, 522; *Vanhook* v. *City of Selma,* 70 Ala. 361, 45 Am. Rep. 85; *Lowenthal* v. *City of Chicago,* 313 Ill. 190, 144 N. E. 829, 831; *In re Hall,* 50 Cal. 786, 195 P. 975, 976; *Askren* v. *Continental Oil Co.,* 252 U. S. 444, 40 S. Ct. 355, 64 L. Ed. 655; 4 Cooley on Taxation, §§ 25 and

27; *Fatjo et al.* v. *Pfister*, 117 Cal. 83, 48 P. 1012; *Fenton* v. *Board of Commissioners of Ada County*, 20 Idaho 392, 119 P. 41; *Hauser* v. *Miller*, 37 Mont. 22, 94 P. 197; *State ex rel.* v. *Police Jury*, 47 La. Ann. 1244, 17 So. 792; *South Covington & C. St. Ry. Co.* v. *Town of Bellevue*, 105 Ky. 283, 49 S. W. 23, 57 L. R. A. 50; *Paducah St. Ry. Co.* v. *McCracken County*, 105 Ky. 472, 49 S. W. 178; *State* v. *Wheeler*, 33 Neb. 563, 50 N. W. 770. In support of the second proposition urged by plaintiffs the following case is cited: *Board of Commissioners* v. *Hammerly*, 85 Okl. 53, 204 P. 445.

There can be no doubt but that the framers of our state Constitution recognized the rights of the people of Utah to local self-government. It was to preserve local self-government free from needless legislative interference that the power to levy taxes for local purposes was by the state Constitution vested exclusively in the proper authority of counties, cities, towns, and other municipal corporations. The power to collect and control the revenues of a municipality is of the very essence of local self-government. The same reasons that may be urged against legislative interference with a levy of a general property tax for municipal purposes apply to the imposing of a license tax by the Legislature for purely municipal purposes. The levy of either tax by the Legislature interferes with local self-government. Upon principle and the great weight of authority, section 5 of article 13 of our state Constitution precludes the Legislature from imposing a license tax upon the inhabitants of a city, town, or county for the sole purpose of raising revenue for such city, town, or county. On the other hand, it is well settled that a law which is enacted to protect a public interest or defend against a public wrong is not a tax, although it requires the payment of a license fee to bear the expense of carrying out its provisions.

If the provision of chapter 91, Laws Utah 1929, which requires the payment of an annual license fee of $5 to a county, city, or town for a permit to sell oleomargarine, is a revenue measure for the sole benefit of such county, city,

or town, then it follows that such provision is unconstitutional, otherwise not. As we approach that question, we must be mindful of the rule that an act of the Legislature will not be declared unconstitutional if it can reasonably be construed to be constitutional. Where the language of a statute is equally susceptible to two constructions, one rendering it valid and the other invalid, the court must adopt the one which renders the statute valid. *Denver & Rio Grande R. R. Co.* v. *Grand County*, 51 Utah 294, 170 P. 74, 3 A. L. R. 1224; *Park* v. *Rives*, 40 Utah 47, 119 P. 1034; *Rio Grande Lumber Co.* v. *Darke et al.*, 50 Utah 114, 167 P. 241, L. R. A. 1918A, 1193; *Garfield Smelting Co.* v. *Industrial Commission of Utah*, 53 Utah 133, 178 P. 57; *Leatham* v. *Reger et al.*, 54 Utah 491, 182 P. 187; *Summit County et al.* v. *Rich County*, 57 Utah 553, 195 P. 639; *Board of Medical Examiners of Utah* v. *Blair*, 57 Utah 516, 196 P. 221; *Pleasant Grove City* v. *Holman et al.*, 59 Utah 242, 202 P. 1096; *Wicks* v. *Salt Lake City et al.*, 60 Utah 265, 208 P. 538; *State* v. *McCornish*, 59 Utah 58, 201 P. 637.

The act here under review is essentially a revenue measure, although it was doubtless also intended to give those who produce butter an advantage over those who manufacture oleomargarine. The act is not calculated to protect a public interest or to defend against a public wrong. It contains no regulatory provisions for the preservation of public health. It does not come within the police power of the state. It is primarily calculated to enhance the revenues of the state. When a revenue measure is enacted into law, provision must be made for the collection of the new revenue thus provided for. It has always been the policy of this state to intrust, for the most part, the assessment and collection of taxes for state and municipal purposes to county officers. That the state Legislature may cast the burden of collecting state and municipal taxes upon officers of cities, towns, or counties without offending against any of the provisions of our state Constitution is not open to serious doubt. No contention is made, or can well

be made, to the contrary. The Legislature may grant or withhold compensation to a municipality to reimburse it for the costs of assessing and collecting taxes for purposes other than its own. This court has recognized the right of the Legislature to impose a duty upon county officers to assess, levy, and collect taxes for purposes other than county purposes with or without compensation to the county for the expenses incurred. *Board of Education of Cache County School Dist. et al.* v. *Daines,* 50 Utah 97, 166 P. 977; *Board of Education of Salt Lake City* v. *Burgon et al.,* 62 Utah 162, 217 P. 1112.

Can it be said that the annual license fee of $5, made payable to a county, city, or town for a permit to sell oleomargarine, is in the nature of compensation to such county, city, or town for services rendered in the enforcing of the state stamp tax provided for in the act? If the question admits of an affirmative answer, the provisions requiring the payment of a license fee must be held to be constitutional. The act under review casts upon counties, cities, and towns the duty of ascertaining if an applicant for a permit to sell oleomargarine is eligible to receive a permit. If the applicant has violated any of the provisions of the act within two years, a permit may not issue. If the applicant is eligible, a permit may be issued, and, when issued, the permittee is entitled to purchase stamps from the state treasurer. If the permit is issued, the municipality issuing the same is required to keep advised at all times as to whether or not the act is being complied with by the permittee. If it is made to appear that a permittee has violated the act, the municipality must, after reasonable notice and a hearing, revoke the permit and immediately certify such fact to the state treasurer.

The primary, if not the sole, purpose of issuing the permit and of certifying the revocation of a permit to the state treasurer, is to keep the state treasurer advised as to the persons to whom he may sell stamps. In performing the duties cast upon counties, cities, and towns under the act,

they are acting as agencies of the state, and not in the capacity of carrying on local self-government. For the services thus rendered to the state, an annual fee of $5 must be paid by each licensee. That the expenses of the municipality in enforcing the act may equal or exceed the revenues derived from the fees collected is by no means improbable. We are thus of the opinion that the provision of chapter 91, Laws Utah 1929, whereby an annual fee of $5 shall be paid into the general fund of a county, city, or town for a permit to sell oleomargarine, may well be regarded as compensation for services rendered to the state by the municipality issuing the permit and assisting the state in the enforcement of the act. Under such view, the provision attacked by the respondents is not unconstitutional. By their pleadings plaintiffs question the constitutionality of chapter 91, Laws Utah 1929, on other grounds. In their briefs, however, they expressly abandon all claims excepting the one we have discussed in this opinion. We express no opinion as to the merits of the other claims set up in plaintiffs' complaints.

The judgment is reversed. Appellants are awarded their costs.

CHERRY, C. J., and EPHRAIM HANSON and FOLLAND, JJ., concur.

STRAUP, J. (dissenting).

The chief question presented is the validity of chapter 91, Laws Utah 1929, referred to in the prevailing opinion. It is asserted by the plaintiffs and denied by the defendants that the act is forbidden by article 13, § 5, of the State Constitution. Whether the act offends other constitutional provisions is not argued. The trial court holding the act violative of article 13, § 5, seemingly found it unnecessary to consider whether it did or did not infringe upon other constitutional provisions. Hence the parties, by this appeal, present the question on the ground only on which the trial court held the act invalid.

What chiefly divides the parties with respect thereto is the meaning of the word "taxes" as used in article 13, § 5. By the defendants it is contended that the word "taxes" refers only to a property tax and not to a license fee or tax; by the plaintiffs that it includes both; by the defendants, that the provision of the Act relating to the $5 license fee is a mere license and not a tax; by the plaintiffs, that the license fee is a tax; by the defendants, rather faintly, that the act, or at least a part of it, is a sort of police measure; and by the plaintiffs, that the act, including the $5 license fee, is a revenue and not a police measure.

By the prevailing opinion, the conclusion is reached that the act in no sense is a police measure, and that it essentially is a revenue measure; but that by the Act it also was intended to give those producing butter an advantage over those producing oleomargarine, which, as I think, renders the act obnoxious even as a revenue measure.

I concur in the view that the act is not a police measure. I also concur in the view that it was intended as a revenue measure. But I think it more than that. Requiring the payment of a $5 fee for a permit to sell oleomargarine and a payment of 10 cents on every pound of artificially colored oleomargarine sold to consumers is in effect a tariff laid on oleomargarine to protect the production and price of butter by increasing the price of oleomargarine to consumers, thereby lessening the consumption of it, and correspondingly increasing the consumption of butter. The act is not only a tariff for revenue, but one to foster and protect the production and price of one domestic commodity as against another.

I think the $5 license fee, in substance and effect, is a tax. The general rule is, and as stated in 37 C. J. 170, that, where the fee is exacted primarily for revenue purposes, and payment of it gives the right to carry on a business or occupation without the performance of any further conditions, it is not a license fee, but a tax imposed, regardless of the

name by which it may be called. Many cases are cited by the plaintiffs and referred to in the prevailing opinion in support of such view, including the cases of *Matthews* v. *Jensen,* 21 Utah 207, 61 P. 303; *Royall* v. *State of Virginia,* 116 U. S. 572, 6 S. Ct. 510, 29 L. Ed. 735; *Waters-Pierce Oil Co.* v. *City of Hot Springs,* 85 Ark. 509, 109 S. W. 293, 16 L. R. A. (N. S.) 1035; *City of Portland* v. *Portland Gas & Coke Co.,* 80 Or. 194, 150 P. 273, 156 P. 1070; *Ex parte Mayes,* 64 Okl. 260, 167 P. 749; *State ex rel. Wyatt* v. *Ashbrook,* 154 Mo. 375, 55 S. W. 657, 48 L. R. A. 265, 77 Am. St. Rep. 765.

That the word "taxes" in article 13, § 5, is not restricted to a mere property tax, but includes license fees or taxes as well, was held in a well-considered case, *People* v. *Martin,* 60 Cal. 153, under similar constitutional provisions. There are other cases cited by the plaintiffs to the same effect. To that effect, too, at least in principle, is the case of *Kimball* v. *Grantsville,* 19 Utah 368, 57 P. 1, 45 L. R. A. 628. The defendants, as to such proposition, chiefly rely on the cases of *State* v. *Camp Sing,* 18 Mont. 128, 44 P. 516, 517, 32 L. R. A. 635, 56 Am. St. Rep. 551; *State* v. *Union Central Life Ins. Co.,* 8 Idaho 240, 67 P. 647; and *State* v. *Nelson,* 36 Idaho 713, 213 P. 358. In such cases the phrase that the Legislature shall not impose taxes for the purpose of any county, etc., was held to apply only to a property tax; but the Montana Constitution is different from ours; and in Idaho, where the constitutional provision in question is similar to ours, the court reached such conclusion by considering other provisions of the Idaho Constitution which are not present in ours. Neither the Idaho nor the Montana court disapproved the holding in *People* v. *Martin,* but distinguished the case on the ground of different constitutional provisions. But, whatever conflict there may be in such decisions, I think the decision of the California court is the more persuasive and the better supported by fundamental principles of construction, and what was decided in *Kimball* v. *Grantsville,* supra, is more in line therewith than with the decision

of either the Montana or the Idaho court. And I do not understand the prevailing opinion disapproves the California decision.

This brings me to the real point upon which we are divided. By the prevailing opinion, as I understand it, the case is ruled on the point that the $5 so-called license fee referred to in the Act is mere compensation for services rendered, and hence not a tax. With that I cannot concur. In that connection the act provides that it shall be unlawful for any person, etc., to sell, or offer for sale, oleomargarine without first obtaining a permit therefor. The permit thus is a prerequisite to the lawful selling, or offering for sale, oleomargarine. No other conditions or obligations are imposed; nor does the act contain any restrictions or regulations for the carrying on of the business; nor does it attempt to regulate or control those engaged in it. The business is only prohibited for the purpose of the license fee, which, in such case, under the great weight of judicial authority, is a tax. If it is a tax, I cannot see how it may be regarded as compensation for services rendered. The Act provides that the permit shall be granted by the boards of county or city commissioners and boards of trustees of towns upon the payment of a license fee of $5 to the treasurer of the city, town, or county, and which shall be "credited to the general fund of the city, town or county collecting the same." The fees paid do not go to the boards of trustees or to any officer or clerk granting the permit or performing any duties or service with respect thereto. They are required to be paid to the treasurer who in the premises has no duties to perform, except to receive the fees and credit them to the general fund of the city, town, or county, and which become a part of the public moneys of the city, town, or county. Such fees may not, any more than any other part of the public moneys, be applied to services rendered in issuing the permits or in performing any other duties or services with respect thereto. *Hauser* v. *Miller*, 37 Mont. 22, 94 P. 197.

I do not see anything in the act which, either expressly or by implication, indicates that the license fees to be paid are to be regarded as, or were intended to be, compensation for services rendered. The fact that the fees are required to be paid to the treasurer and credited to the general fund of the city, town or county, and to become a part of the public moneys thereof, precludes, as it seems to me, any claim or contention that such fees were intended to be compensation for services. I see no more basis for such a claim than for one that the payments of 10 cents a pound for every pound of oleomargarine sold to consumers and required to be made to the state treasurer were intended to be for services rendered. The general scope and purpose of the act, and as stated in the prevailing opinion, being a revenue measure, and the license fee required to be paid to obtain a permit to sell or offer for sale oleomargarine being a part and parcel of the act, and, under the great weight of judicial authority, a tax, the inevitable conclusion that the act in such respect falls within the constitutional inhibition forbidding the Legislature from imposing taxes for the purpose of any county, city, or town may not be avoided by calling such license fee required to be paid mere compensation for services rendered, when, as I think, there is not anything in the Act, either expressly or by implication, to indicate any such purpose or intent.

I therefore am of the opinion that the judgment of the court below should be affirmed.